### H. G. CHRISTMAN CO. et al. v. MICHIGAN GYPSUM CO. et al.
### No. 10581.

Circuit Court of Appeals, Eighth Circuit.
Sept. 11, 1936.

Frederic M. Miller, of Des Moines, Iowa (Jesse A. Miller, of Des Moines, Iowa, on the brief), for appellants.

Benedict S. Deinard, of Minneapolis, Minn., and Albert E. May, of Omaha, Neb. (R. L. Parrish and Maxwell A. O'Brien, both of Des Moines, Iowa, and L. Wm. Crawhall, of Minneapolis, Minn., on the brief), for appellees.

Before GARDNER and SANBORN, Circuit Judges, and NORDBYE, District Judge.

SANBORN, Circuit Judge.

This controversy arises out of the construction of the United States Veterans' Hospital at Des Moines, Iowa. The action was one to recover on a bond given by the American Employers Insurance Company, as surety, to secure the performance of the construction contract, as provided by the Heard Act (Act of August 13, 1894, 28 Stat. 278, as amended, Act of February 24,

1905, 33 Stat. 811, and March 3, 1911, 36 Stat. 1167, 40 U.S.C.A. § 270). The bond was conditioned upon the satisfactory performance of the contract and the payment by the contractor for labor and material furnished for the construction. The appellants are the contractor and its surety. The appellees are materialmen who intervened in the action. The case was tried to the court without a jury, and judgments were entered in favor of the appellees, from which the contractor and his surety have appealed.

In authorizing suit on a bond such as this, the Heard Act provides: "If no suit should be brought by the United States within six months from the completion and final settlement of said contract, then the person or persons supplying the contractor with labor and materials shall * * * have a right of action * * * Provided, That * * * it * * * shall be commenced within one year after the performance and final settlement of said contract, and not later."

This action was commenced on March 22, 1934. The complaint alleged, and the appellees contended, that "final settlement" of the contract was made on August 21, 1933. The appellants, on the other hand, claimed that the date of "final settlement" was February 1, 1934, and that therefore the action was premature. The trial court determined that "final settlement" was made August 21, 1933, as contended by the appellees.

By the terms of its contract with the government, the contractor was to complete the building within 250 days after July 9, 1932. The contract provided for liquidated damages in case of delay, but also provided for the granting of extensions of time for completion of the work, under certain conditions. The work progressed, with short interruptions due to a strike and to severe weather conditions, until February 24, 1933, at which time the contractor was forced to stop work for lack of funds due to the closing on February 21, 1933, of the Citizens' National Bank of South Bend, Ind. Shortly thereafter, the contractor's right to continue the work was terminated by the government, and the surety undertook the completion of the work on April 13, 1933.

Before the surety took over the construction work, it received a letter, dated April 1, 1933, from the Chief, Administrative Division, Construction Service of the Veterans' Administration, reading in part as follows: "As the contract work performed by you progresses, payments will be made as provided for in the contract. The vouchers for the work performed by you will be drawn in favor of the American Employers' Insurance Company, surety for H. G. Christman Company. The first voucher prepared will be entitled, 'First Payment to the Surety.' These vouchers will be prepared by the Superintendent of Construction at Des Moines and will include only the work performed and materials furnished by you. The vouchers, when certified by your representative at Des Moines and by the Superintendent, will be forwarded to this office and, when approved, payment will be made by the Disbursing Officer of the Veterans' Administration in Washington. In this connection attention is invited to the fact that the funds to be made available for your use in the completion of this work wil include the value of work still to be performed and the amount of the voucher for February work, which was delivered to your Washington representative yesterday, making a total of $127,714.59. The unpaid balance of the value of work and materials furnished by H. G. Christman Company prior to March 7, 1933 amounts to $82,861.44. This balance will be retained by the Government until the work is completed, after which the Comptroller General will decide as to its disposition."

On August 11, 1933, the Director of Construction wrote the Veterans' Administration that, in his opinion, liquidated damages should not be charged for 47 days' delay caused by the closing of the bank. The Assistant Administrator indorsed his approval August 29, 1933. On August 16, 1933, the Director of Construction wrote the surety that the delay of 47 days caused by the closing of the bank in which the contractor's funds were deposited was "a delay due to unforeseeable causes beyond your control and without your fault or negligence."

On August 17, 1933, the surety forwarded to the Veterans' Administration a voucher for the final payment in the sum of $32,591.36, and another voucher which called for the unpaid balance due the contractor (retained percentages) amounting to $81,230.64. The latter voucher was accompanied by an assignment of the contractor's rights to the funds called for. Each of these vouchers contained the re-

cital, "Work was completed June 22, 1933," and bore the signature of the Director of Construction; and each was approved by the "Chief, Administrative Division, Construction Service," of the Veterans' Administration for payment of the amount claimed in the voucher.

The Director of Construction, on August 21, 1933, made his report to the Assistant Administrator of the Veterans' Administration, stating: "The work mentioned above having been completed by the contractor and its surety, the following is submitted as the basis for settlement:" Then follows a detailed statement of the basis proposed, showing $32,591.36 as the unpaid balance due the surety as a final payment for the work done and materials furnished by it, and $81,230.64 as the unpaid balance due the contractor. The report concludes thus:

"Final inspection report dated July 6, 1933, states that all work was completed in accordance with the drawings and specifications on June 22, 1933. It is, therefore, recommended that the work be accepted, that settlement on the above basis be approved, that the payment of voucher, in amount $32,591.36 in favor of the American Employers Insurance Company (Surety for H. G. Christman Company) be authorized and that the voucher, in amount $81,230.64, in favor of the H. G. Christman Company be forwarded to the General Accounting Office for direct settlement.

"Your approval in duplicate is requested.
"L. H. Tripp."

The Assistant Administrator indorsed his approval on the report as follows: "Approved August 21, 1933. George E. Ijams, Assistant Administrator."

On or about August 29, 1933, the Veterans' Administration referred each of the claims represented by the vouchers to the General Accounting Office by separate written "references of claims." The "reference" of the claim represented by the voucher calling for the final payment of $32,591.36 to the surety, after describing the nature of the claim, stated that, "In view of the foregoing, claim is approved in the amount as vouchered," and, "The accompanying account in the amount stated above has been administratively examined and is forwarded to you for settlement in the amount found due * * *." The "reference" of the claim represented by the voucher covering the unpaid balance (retained percentages), of $81,230.64, due the

contractor, advised the General Accounting Office as follows: "The claim is administratively approved in the amount of $81,-230.64 subject to the claim of surety as set forth in his letter dated August 17, 1933, attached hereto" (this letter explains the surety's right to the retained percentages). It was further stated in the "reference" of this claim that: "The accompanying account in the amount stated above has been administratively examined and is forwarded to you for settlement of the amount found due * * *."

A "Certificate of Settlement," addressed both to the contractor and the surety, issued from the General Accounting Office on February 1, 1934. Except for a deduction for liquidated damages occasioned by the disallowance by that office of the 47-day extension which had been granted to the surety on account of the closing of the bank, the certificate authorized payment on the basis approved by the Assistant Administrator on August 21, 1933; and the entire sum found due under the contract by the General Accounting Office was eventually paid to the surety.

The appellants contend that it appears as a matter of law that "final settlement" was made on February 1, 1934, by the General Accounting Office; while the appellees contend that the "final settlement" took place when the Assistant Administrator approved the report of the Director of Construction on August 21, 1933.

Since the decision of the United States Supreme Court in Globe Indemnity Co. v. United States to Use of Steacy-Schmidt Mfg. Co., 291 U.S. 476, 54 S.Ct. 499, 78 L.Ed. 924, certain questions relating to "final settlements" under the Heard Act are no longer debatable.

The term "final settlement," as used in the act, was not intended to denote payment, but was used to describe an administrative determination of the amount due upon completion of the contract. Illinois Surety Co. v. United States to Use of Peeler, 240 U.S. 214, 36 S.Ct. 321, 60 L.Ed. 609; Globe Indemnity Co. v. United States, etc., supra, 291 U.S. 476, 481, 54 S.Ct. 499, 78 L.Ed. 924; Antrim Lumber Co. v. Hannan et al. (C.C.A.8) 18 F.(2d) 548.

The Budget and Accounting Act (June 10, 1921, c. 18, § 304, 42 Stat. 24, 31 U.S. C.A. § 44), setting up the General Accounting Office under the direction of the Comptroller General, did not make final

administrative determinations in the executive departments any the less final settlements within the meaning of the Heard Act than they had been before. Consolidated Indemnity & Ins. Co. v. W. A. Smoot & Co. et al. (C.C.A.4) 57 F.(2d) 995; Globe Indemnity Co. v. United States, etc., supra, 291 U.S. 476, 481, 54 S.Ct. 499, 78 L.Ed. 924.

"A determination, made and recorded in accordance with established administrative practice by the administrative officer or department having the contract in charge, that the contract has been completed and that the final payment is due, fulfills these requirements" [of final settlement]. Globe Indemnity Co. v. United States, etc., supra, 291 U.S. 476, 483, 54 S.Ct. 499, 501, 78 L.Ed. 924.

■ Where such an administrative department, in forwarding the claim, makes every determination prerequisite to payment, declares that the contract has been completely performed, states the balance due after deducting the stipulated amount for liquidated damages for delay, declares that the claim has received administrative examination and is approved for the balance found due, and records its finding, there is a "final settlement" within the meaning of the Heard Act, even though the Comptroller General may not approve the administrative determination in his auditing of the accounts. Globe Indemnity Co. v. United States, etc., supra, 291 U.S. 476, 483, 484, 54 S.Ct. 499, 78 L.Ed. 924.

"A different question would be presented if the department concerned declined to settle the claim and referred it to the General Accounting Office for settlement. See Lambert Lumber Co. v. Jones Engineering & Const. Co., supra [(C.C.A.8) 47 F.(2d) 74]." Globe Indemnity Co. v. United States, etc., supra, 291 U.S. 476, 484, 54 S. Ct. 499, 502, 78 L.Ed. 924.

In the case at bar it does not appear that the Veterans' Administration declined to settle the claim of the contractor and his surety and referred it to the General Accounting Office for settlement. It is true that the surety, upon taking over the work, was notified by the Veterans' Administration that the Comptroller General would decide as to the disposition of retained percentages. This notice obviously meant that he would ultimately determine who was to receive such retained percentages; it did not mean that he would determine when the contract was completed and when the final payments were due. The report of the Director of Construction of August 21, 1933, with reference to the two final vouchers, did not recommend that the Veterans' Administration decline to settle the claims and refer them to the Accounting Office for final settlement. Instead it stated that the work was completed on June 22, 1933. It recommended that the work be accepted and that settlement on the basis proposed in the report be approved; that the final payment to the surety for the work done by it be authorized as called for by the voucher; and "that the voucher, in amount $81,230.64, in favor of the H. G. Christman Company be forwarded to the General Accounting Office for direct settlement." Nothing in the "references" forwarding the claims represented by the two vouchers to the General Accounting Office indicates that the matter of "final settlement" in the sense of an administrative determination of the amount due was referred to that office. The "references" stated that both vouchers were approved. With respect to the voucher calling for retained percentages, the "reference" transmitting it states, "subject to the claim of surety." This was obviously to call attention to the fact that the surety claimed the right to have this fund paid to it, although the moneys had been withheld from the contractor and under other circumstances the contractor would have been entitled to receive them.

■ It seems clear to us, as it did to the trial court, that the action taken by the Assistant Administrator on August 21, 1933, in approving the report of the Director of Construction, constituted a determination, made and recorded in accordance with established administrative practice by the department having the contract in charge, that the contract was completed and that the final payment was due. This action of the Assistant Administrator was therefore a "final settlement" within the meaning of the Heard Act, as construed by the Supreme Court in Globe Indemnity Co. v. United States, etc., supra. It is also clear that the decision of this court in Lambert Lumber Co. v. Jones Engineering & Const. Co. et al., supra, 47 F.(2d) 74, upon which the appellants rely, must be read in the light of the Globe Indemnity Case, and would now be authority only for the proposition that where the administrative officer or department having charge of the

construction had declined to settle the contractor's claim, and had referred it to the General Accounting Office for settlement, the action of the latter would constitute the "final settlement" within the meaning of the act.

The judgments appealed from are affirmed.