GLOBE INDEMNITY CO. *v.* UNITED STATES to THE USE OF STEACY-SCHMIDT MANUFACTURING CO., INC.

No. 419. Argued February 13, 14, 1934.—Decided March 5, 1934.

Mr. *Frederic L. Ballard,* with whom *Messrs. Robert Brigham* and *Morris Cheston* were on the brief, for petitioner.

Mr. *Samuel W. Cooper* for respondent.

By leave of Court, *Mr. Edward H. Cushman* filed a brief on behalf of the Truscon Steel Co., as *amicus curiae.*

Mr. Justice Stone delivered the opinion of the Court.

Respondent brought this suit in the District Court for Eastern Pennsylvania to recover on a bond given by petitioner, as surety, to secure the performance of a government construction contract as provided by the Heard Act, which requires the contractor to furnish a surety bond to the government as obligee, conditioned upon satisfactory performance of the contract and payment by the contractor for labor and material furnished by subcontractors for the construction. Act of August 13, 1894, 28 Stat. 278; as amended, Act of February 24, 1905, 33 Stat. 811, and March 3, 1911, 36 Stat. 1167; 40 U.S.C.A., § 270. In authorizing suits on the bond, the Heard Act provides:

" If no suit should be brought by the United States within six months from the completion and final settlement of said contract, then the person or persons supplying the contractor with labor and material shall . . . have a right of action . . . provided that . . . it . . . shall be commenced within one year after the performance and final settlement of the said contract and not later . . ."

The contract was for materials for use in the construction of an irrigation project and was entered into on behalf of the United States by the Department of the Interior under the provisions of the Reclamation Act of June 17, 1902, 32 Stat. 388, 389; 43 U.S.C.A., §§ 391, 419. Under date of June 16, 1927, the First Assistant Secretary of the Department of the Interior forwarded the claim of the contractor to the General Accounting Office " for direct settlement," by a letter which stated that the contract had been completely performed and that, after deducting a stipulated amount as liquidated damage for delay in performance, the balance due was $8,889.30. The letter concluded: " The claim has received administrative examination, is approved for $8,889.30 and I recommend that the amount found due be paid " from a designated ap-

propriation. Four months later, on October 26, 1927, the General Accounting Office issued its formal certificate of settlement confirming the balance found due by the Department of the Interior. The claim was paid by the Treasurer of the United States on November 5, 1927.

The defense to the present suit on the bond was that it had been begun October 17, 1928, more than one year after performance and final settlement of the contract. The sole question presented is whether " final settlement," within the meaning of the Heard Act was effected by the action of the Interior Department of June 16, 1927, or only by the certificate of the General Accounting Office of October 26th. Judgment for the petitioner by the District Court was reversed by the Court of Appeals for the Third Circuit, 66 F. (2d) 302, which held that the Budget and Accounting Act of 1921, 42 Stat. 23, 31 U.S.C.A., §§ 41, *et seq.,* had transferred the authority to make settlements of such contracts from the Department of the Interior to the General Accounting Office, that consequently final settlement did not occur until the action of the General Accounting Office upon the contractor's claim, and that the suit brought within a year was in time. Certiorari was granted to resolve an alleged conflict between this decision and that in *Consolidated Indemnity & Insurance Co.* v. *W. A. Smoot & Co.,* 57 F. (2d) 995; compare *Lambert Lumber Co.* v. *Jones Engineering & Construction Co.,* 47 F. (2d) 74.

The Budget and Accounting Act set up the General Accounting Office under the direction of the Comptroller General of the United States. Section 304, 31 U.S.C.A., § 44, transferred to it the powers and duties of the Comptroller of the Treasury and of the six Auditors of the Treasury Department, and authorized the heads and disbursing officers of executive departments to apply for the decision of the General Accounting Office upon any question involving a payment to be made by them, which de-

480

cision, it is declared, shall govern such office in passing upon the account. And by § 305, 31 U.S.C.A., § 71, it is provided that " all claims and demands whatever by the government of the United States or against it . . . shall be settled and adjusted in the General Accounting Office." But none of these duties imposed on the Comptroller General were new. Like provisions applicable to the Comptroller of the Treasury or the Auditors of the Treasury Department are found in § 8 of the Act of July 31, 1894, 28 Stat. 207, and in Rev. Stat. § 236. The chief change effected by the Budget and Accounting Act was that it transferred powers lodged with officers of the Treasury Department to the Comptroller General and made his office independent of the executive branch of the government. But the function which he exercises in auditing and settling claims against the government is precisely that which was previously exercised by the Accounting Office in the Treasury Department. Before, as after, the Budget and Accounting Act, claims against the United States might be paid from the proper appropriation upon approval of the authorized officer of the department concerned, without previous settlement or audit by the accounting office. Before, as after, department heads or disbursing officers might ask the accounting office to render a decision upon a question involving payment to be made by them, in order to protect the disbursing officers and their bondsmen from liability for a payment unauthorized by law.[1]

---

[1] The history, procedure and function of the Accounting Office of the Treasury before 1921 and of the General Accounting Office are discussed in detail in Smith, The General Accounting Office (Institute for Government Research, Service Monograph No. 46); Willoughby, The Legal Status and Functions of the General Accounting Office (Institute for Government Research, Studies in Administration). The settlement and adjustment of claims against the government receive particular treatment in Willoughby, c. IV.

Prior to the enactment of the Budget and Accounting Act this Court had decided *Illinois Surety Co. v. United States to the use of Peeler,* 240 U.S. 214. There the Treasury Department had directed that a voucher be issued for the balance which it found to be due upon a contract entered into with the Department for the construction of a public building. The Treasury Auditors apparently did not pass upon the claim before payment. The issue presented was whether suit by a subcontractor upon a bond given under the Heard Act was premature when begun six months after the date of the Department's determination, but less than six months after payment. It was held that it was not; that the term " final settlement " in the Heard Act was not intended to denote payment, but had been used to describe an administrative determination of the amount due upon completion of the contract. Similar determinations made by other departments before the enactment of the Budget and Accounting Act have repeatedly been held to constitute final settlement within the meaning of the Heard Act. *Pederson v. United States for the use of Washington Iron Works,* 253 Fed. 622; *United States for use of R. Haas Electric & Mfg. Co. v. Title Guaranty & Surety Co.,* 254 Fed. 958; *Mandel v. United States for use of Wharton & N. R. Co.,* 4 F. (2d) 629; *Antrim Lumber Co. v. Hannan,* 18 F. (2d) 548.

In the light of this history we cannot say that Congress, merely by transferring the function previously performed by the Treasury to the General Accounting Office, intended to disturb this construction of the statute or to make final administrative determinations in the executive departments any the less final settlements within the meaning of the Heard Act than they had been before. *Consolidated Indemnity & Insurance Co. v. W. A. Smoot & Co., supra.*

Respondent does not directly challenge this conclusion. It does not assert that the General Accounting Office can alone make a final settlement of a government contract, or deny that in some circumstances the authorized officer of the department concerned may make it, but it insists that where, as in this case, the claim, in advance of payment, is referred to the General Accounting Office, its decision alone is controlling and is therefore the final settlement which, under the Heard Act, fixes the period within which suit by a subcontractor may be brought.

It is true, as respondent points out, that the question thus raised is different from that involved in the earlier cases, where payment preceded audit by the accounting office, and from that in the *Peeler* case. The contract in the *Peeler* case was under the administrative control of the Treasury Department and when that case arose and was decided the power to settle contracts, now lodged with the Comptroller General, was in the Treasury Department. Thus the question presented there was not whose was the authority to make the final settlement, but at what stage the decision of the department, authorized to make it, became final. Here the question is whether the decision of the Comptroller General supplanted that of the Department of the Interior, which concededly would have been a final settlement if there had been no action by the Comptroller General before payment. This question must be resolved in view of the purpose sought to be accomplished by the Heard Act and of the administrative procedure for the settlement, auditing and payment of claims against the government.

The Heard Act relates only to bonds given as surety for those entering into contracts for the construction of public buildings or works. It serves the dual purpose of securing to the United States the protection of a surety

bond conditioned upon the performance of the contract, and of protecting those who furnish labor. or material to the contractor by the further condition that the contractor shall pay for such labor and material. The statute provides that subcontractors may intervene in any suit brought on the bond of the government, but if the government does not bring suit it makes the time of completion and final settlement of the contract the crucial date for measuring the period within which subcontractors are permitted to bring suit on the bond.

The policy of the statute to afford protection to the interests of laborers and material men would not be effected unless they were allowed to bring suit with reasonable promptness after the United States has determined that it will have no claim on the bond and unless the date of final settlement which fixes the time within which suit is permitted could be ascertained with reasonable certainty and finality. A determination, made and recorded in accordance with established administrative practice by the administrative officer or department having the contract in charge, that the contract has been completed and that the final payment is due, fulfills these requirements. See *Illinois Surety Co.* v. *United States to the use of Peeler, supra.* Such was the determination made here by the Interior Department, which alone was in possession of the knowledge and data necessary to prompt decision. The Department, in forwarding the claim, made every determination prerequisite to payment. See *Illinois Surety Co.* v. *United States to the use of Peeler, supra; Mandel* v. *United States, supra.* It declared that the contract had been completely performed; it stated the balance due after deducting the stipulated amount for liquidated damages for delay; it declared that the claim had received. administrative examination and

was approved for the balance found due; and it recorded its findings. Such a determination would be " final settlement " for purposes of the Heard Act if payment had preceded action by the Comptroller General. *Consolidated Indemnity & Ins. Co.* v. *W. A. Smoot & Co., supra.* If, as respondent maintains, this determination may be supplanted by a subsequent settlement by the Comptroller General, the subcontractors could never be certain that the departmental determination would mark the period of limitation, and suits begun within the statutory period measured from this determination might have to be discontinued and begun anew if the departmental head or disbursing officer should later refer the claim to the Comptroller General. A construction so out of harmony with administrative practice, so inconvenient in operation and so inconsistent with the obvious purpose of the statute' is not to be entertained.

No such consequences either to the government or to subcontractors can result from treating the departmental settlement as the final one within the meaning of the Heard Act. There is no more occasion for delaying suit on the bond because of the contingency that the departmental determination may not be approved by the Comptroller General in his auditing of the accounts, than because of the contingency that any administrative determination may not be approved by the courts. See *Illinois Surety Co.* v. *United States to the use of Peeler, supra,* 221; *Consolidated Indemnity & Ins. Co.* v. *W. A. Smoot & Co., supra,* 997.

A different question would be presented if the department concerned declined to settle the claim and referred it to the General Accounting Office for settlement. See *Lambert Lumber Co.* v. *Jones Engineering & Const. Co., supra.*

*Reversed.*