**NATIONAL SURETY CORPORATION v.**
**REYNOLDS.**
No. 10706.

Circuit Court of Appeals, Eighth Circuit.
Feb. 12, 1937.

Joseph R. Long, of St. Louis, Mo. (Walter R. Mayne and Fordyce, White, Mayne & Williams, all of St. Louis, Mo., on the brief), for appellant.

Albert L. Schmidt, of St. Louis, Mo. (Milton C. Lauenstein, of St. Louis, Mo., on the brief), for appellee.

Before STONE, SANBORN, and VAN VALKENBURGH, Circuit Judges.

SANBORN, Circuit Judge.

Wm. A. Riley Construction Company (hereinafter called the contractor) on November 15, 1932, entered into a written contract with the United States to build certain noncommissioned officers' quarters at Jefferson Barracks, Mo. The National Surety Company executed the bond required to insure the performance of the contract and payment for labor and materials. The National Surety Corporation (hereinafter called the surety) later assumed this obligation of the National Surety Company. The contractor sublet the plumbing and heating to D. H. Reynolds. The buildings were completed July 17, 1933. On July 21, 1933, Major Schoenfeld, the Constructing Quartermaster, wrote to the Commanding Officer at Jefferson Barracks, as follows:

"Subject: Transfer of four double sets N.C.O. quarters.
"To: The Commanding Officer, Jefferson Barracks, Mo.
"1. All terms of Contract No. W 430 qm–682 [the contract in suit], for the construction of four double sets of N.C.O. quarters at this station, have been complied with and work completed in a satisfactory manner.
"2. In compliance with paragraph 19, A.R. 30–1435, this work is hereby transferred to your headquarters effective this date.
"3. Written acceptance is requested.
"F. Schoenfeld,
"Major QM Corps Quartermaster."

On July 22, 1933, Major Schoenfeld sent the following letter to Captain Gray, the Finance Officer in St. Louis:

"Subject: Final Payment Contract No. W430 qm–682
"To: The Finance Officer, U.S. Army, 2nd. and Arsenal Sts., St. Louis, Missouri.
"1. Transmitted herewith, for final payment, estimate under .contract for construction of four double sets Non-Commissioned Officers Quarters, is submitted for .payment, approved in the amount of Three Thousand Nine Hundred Fifty Six Dollars and Seventy-Five Cents ($3956.-75).
"2. Liquidated Damages in the amount of One Hundred Fifty Dollars and no/100 Cents has been deducted.
"Fredk Schoenfeld [Signature]
"Frederick Schoenfeld
"Major QM Corps
"Constructing Quartermaster."

The estimate transmitted was that of the contractor "for completed work." It showed that the total price, plus extras, was $53,780.85; that previous payments amounted to $49,674.10, and liquidated damages to $150, leaving a balance due the contractor of $3,956.75.

Accompanying the estimate was a statement, approved by Major Schoenfeld, entitled, "Final Payment To Contractor." It identified the contract, showed that the contractor was the Wm. A. Riley Construction Company, and recited:

| | |
|---|---|
| $53,780.85 Contract Total. Total Completion .......... | $53,780.85 |
| Less Previous Payments.... | 49,674.10 |
| | 4,106.75 |
| Less Liquidated Damages.. | 150.00 |
| Amount of. Final Payment.. | $ 3,956.75 |

\* \* \* \* \* \*

Contract completed July 17, 1933.

Major Schoenfeld's letter, with the accompanying documents, was received by Captain Gray, the Finance Officer, July 24, 1933. Apparently at his verbal request or that of one of his clerks, the Major wrote him on July 26, 1933, as follows:
"Subject: Completion date, Contract No. W 430 qm–682.
"To: The Finance Officer, U.S. Army, 2nd and Arsenal Sts., St. Louis, Missouri.
"1. Contract No. W 430 qm–682, with the Wm. A. Riley Construction Company, of University City, Missouri, for the con-

struction of four double sets of Non-commissioned Officers Quarters at this station, was successfully completed on July 17, 1933.

"F. Schoenfeld [Signature]
"F. Schoenfeld
"Major QM Corps
"Constructing Quartermaster."

This letter was received by Captain Gray on the day it was written. Captain Gray issued a voucher which bears date July 25, 1933, and which contains the following recitals:

"The United States, Dr. To Wm. A. Riley Construction Company, * * *

|  | Dollars | Cts. |
|---|---|---|
| Per detailed bill herewith #876 | 4,106 | 75 |
| Less liquidated damages | | |
| 15 days at $10.00 per day.... | 150 | 00 |
| | 3,956 | 75 |

\* \* \* \* \* \*

Contract completed July 17, 1933.
Final.

| Total, | 3,956 | 75 |

\* \* \* \* \* \*

"Paid by Check No. 23742, dated Jul. 26, 1933 for $3956.75 on Treasurer of the United States in favor of payee named above."

The voucher above referred to and the check in payment thereof were released on July 26, 1933.

On July 24, 1934, Reynolds, the subcontractor, intervened in an action brought upon the bond under the Heard Act (Act of August 13, 1894, 28 Stat. 278, as amended, Act of February 24, 1905, 33 Stat. 811, and March 3, 1911, 36 Stat. 1167, § 291, 40 U.S.C.A. § 270), which provided: "If no suit should be brought by the United States within six months from the completion and final settlement of said contract, then the person or persons supplying the contractor with labor and materials shall * * * have a right of action * * * Provided, That * * * it * * * shall be commenced within one year after the performance and final settlement of said contract, and not later."

Reynolds alleged in his complaint in intervention that there was a balance due him for labor and material furnished, and that final settlement of the contract took place on July 26, 1933, the day when Captain Gray released the voucher and check. The surety, on the other hand, asserted that final settlement of the contract was made on July 22, 1933, when the Constructing Quartermaster determined that the contract was completed and that final payment was due.

At the trial, the surety moved for a directed verdict, on the ground that the suit was brought too late. The trial court denied this motion, and submitted to the jury the question whether the action of Captain Gray on July 26, 1933, constituted final settlement. The jury found for the intervener. From the judgment entered on the verdict, this appeal is taken.

■ "The term 'final settlement,' as used in the act, was not intended to denote payment, but was used to describe an administrative determination of the amount due upon completion of the contract. Illinois Surety Co. v. United States to Use of Peeler, 240 U.S. 214, 36 S.Ct. 321, 60 L. Ed. 609; Globe Indemnity Co. v. United States, etc., supra, 291 U.S. 476, 481, 54 S. Ct. 499, 78 L.Ed. 924; Antrim Lumber Co. v. Hannan et al. (C.C.A.8) 18 F.(2d) 548." H. G. Christman Co. v. Michigan Gypsum Co. (C.C.A.8) 85 F.(2d) 474, 476.

"A determination, made and recorded in accordance with established administrative practice by the administrative officer or department having the contract in charge, that the contract has been completed and that the final payment is due, fulfills these requirements" [of final settlement]. Globe Indemnity Co. v. United States, etc., 291 U.S. 476, 483, 54 S.Ct. 499, 501, 78 L.Ed. 924.

■ Where an administrative department or officer, in forwarding the final estimate, makes every determination prerequisite to payment—declares that the contract has been completely performed; states the balance due after deducting the stipulated amount for liquidated damages for delay; declares that the claim has received administrative examination and is approved for the balance found due—there is a "final settlement" within the meaning of the Heard Act, even though the officer charged with the duty of auditing or paying the account may not approve the determination made. Globe Indemnity Co. v. United States, supra, 291 U.S. 476, at page 483, 54 S.Ct. 499, 501, 78 L.Ed. 924; H. G. Christman Co. v. Michigan Gypsum Co., supra, 85 F.(2d) 474, at page 477.

■ If Captain Gray, the Finance Officer, was the administrative officer having this

contract in charge, then his determination that the contract was completed and that final payment was due, as evidenced by his voucher, was the final settlement. If, on the other hand, Captain Gray was a mere disbursing officer whose only duty was to make the final payment upon the proper determination by the administrative officer actually having the contract in charge that the contract was completed and that final payment was due, then it was the determination of that officer, as evidenced by his communication to Captain Gray, that constituted the final settlement of the contract.

Captain Gray, who was called as a witness for Reynolds, the intervener, testified in substance as follows: That he was the Finance Officer, the head of the Finance Department, of the War Department for the United States Army in the City of St. Louis. That all financial transactions of the Army for this District were handled through his office with certain exceptions not here material. That he was the disbursing officer for the district and handled the disbursement of funds for certain public buildings pertaining to the War Department. That: "The manner in which disbursements are made is that Congress appropriates the money and this money is turned over to the Secretary of War and he distributes it among certain army corps, such as the Quartermaster, Quartermaster General's office, and when there is a project or a building authorized, the Quartermaster General allots this money to the officer who makes the contract or to the Constructing Officer, and then he certifies it to me for payment. The money is placed to my credit with the Treasury of the United States. During the progress of a building, in cases of partial payment, the Constructing Quartermaster certifies to me the percentage of work completed and acceptable under the terms of the Agreement, and my office draws a voucher and I certify it and a check is drawn and I sign the check. I sign the voucher and check after it has been determined that a claimant is entitled to the money. Sometimes the voucher is signed before the check and sometimes they are signed together." That: "If the report comes in from the constructing officer—if there is anything in it to lead us to believe that it is not in accordance with the contract, it would be returned to him for further information." That if the constructing officer sends in the necessary certificates, then the finance offi-

cer makes up a voucher and pays it with a check. That before the present regulations were adopted in 1920, the practice was for the Constructing Officer to make up the voucher form and certify it to the disbursing officer for payment. That the present regulations require the Finance Officer to make the certification and determine finally the amount, although if the voucher were made up by the Constructing Officer correctly and checked in every respect, the Finance Officer would honor it, but that that is not according to the usual regulations and "he is simply doing our work." That: "The final approval depends upon my discretion as to whether or not I would take his certification." That under the practice in the Finance Officer's department, he (Captain Gray) is required to account with a voucher for every dollar paid out of funds allocated to him. That he has no connection whatever with the construction work itself and no administrative reason for determining the date of final settlement of a construction contract; That dates of final settlement on contracts filed with him for payment are based on the certificate of the Constructing Officer; that Major Schoenfeld, who signed the letter of July 22, 1933, was the Constructing Officer in charge of the construction work at Jefferson Barracks under the Riley contract; that the letter of July 26, 1933, from Major Schoenfeld, stating that the work was completed July 17, 1933, was obtained to be filed with the voucher which goes forward to the General Accounting Office for auditing.

It seems clear from this evidence that Captain Gray was a disbursing officer, and had no relation to the performance of the contract in suit other than in the preparation of the proper vouchers and checks, in accordance with the regulations governing his office, for payments due under the contract. He was not the administrative officer having the contract in charge. He was the officer in charge of the funds from which payments were to be made upon the contract.

An analysis of the contract itself leads to the same conclusion. The only reference to the Finance Officer is found on the first page of the contract, where it is recited: "Payments to contractor to be made by the Finance Officer, U. S. Army, Second and Arsenal Streets, St. Louis, Missouri." The contract was executed by "P. W. Guiney, Colonel QMC., Acting Chief, Construction Division." By the

terms of the contract, the contracting officer or his duly authorized representative is given general authority with respect to its performance. Subject to certain limitations, he is authorized to make changes in the work; to investigate latent conditions materially differing from those shown in the drawings or specifications; to decide the question of "equality" where materials or articles are referred to in the specifications as "equal to" any particular standard; to approve machinery or equipment to be installed; to call for full information from the contractor concerning materials to be incorporated; to require the dismissal of incompetent or objectionable employees of the contractor; to ascertain the facts with reference to the causes and extent of delays in the work, and to make findings of fact with reference thereto, which shall be conclusive on the contractor, subject only to an appeal to the head of the department; to decide all disputes concerning questions of fact arising under the contract, subject to a limited right of appeal; to approve monthly progress payments, subject to the retention of a percentage of 10 per cent. until "final completion and acceptance of all work covered by the contract"; and to make progress payments in full after fifty per cent of the work has been completed, if he finds that satisfactory progress has been made.

While no witness expressly testified that Major Schoenfeld was the duly authorized representative of the Contracting Officer, no other inference is possible. It was upon certificates of the Constructing Quartermaster that progress payments were made; he was in charge of the work; and it was upon his determination, recorded on July 22, 1933, that the final voucher and check were issued. As already pointed out, Captain Gray testified that the Major was the Constructing Officer in charge of the construction work under the Riley contract. Bert Bowelle, a civilian engineer, testified that he was in charge of this construction for Major Schoenfeld, the Constructing Quartermaster; that the Major was in charge of the construction under the contract; that he (Bowelle), together with the Major and the Commanding Officer of Jefferson Barracks, on July 21, 1933, made a final inspection of the completed work, and that thereafter the letter of July 21, 1933, transferring the buildings to the Commanding Officer was written, as well as the letter of July 22, 1933, transmitting the final estimate of the contractor to the Finance Officer for payment. Bowelle testified that he wrote the letter of July 22, 1933, for Major Schoenfeld, who signed it, and that "after my letter to the Finance Officer, dated July 22nd, we were through with the entire project and that closed the entire subject so far as dealings between the Quartermaster and the contractor were concerned."

We think it is impossible to reach any other conclusion than that the determination of Major Schoenfeld, the Constructing Quartermaster, on July 22, 1933, evidenced by his letter, with the accompanying estimate and statement approved by him, constituted the "final settlement" of this contract. His letter of July 26, 1933, stating that the contract was completed on July 17, 1933, added nothing, because he had already reported on July 22, 1933, in the approved statement accompanying his letter, that the work was completed on July 17, 1933. This must have been overlooked by the Finance Officer, or else, for some reason of his own, he wanted a statement as to the date of completion in a different form.

The conclusion which we have reached is in accord with that reached by the Circuit Court of Appeals of the Fourth Circuit in Consolidated Indemnity & Ins. Co. v. W. A. Smoot & Co., 57 F.(2d) 995. That case involved the question of the final settlement of a construction contract covering barracks at Fort Humphreys, Va. It was there held that the determination made by the Constructing Quartermaster that the work was completed and that final payment was due as evidenced by his signing of a voucher (which was thereafter transmitted to the disbursing officer but not approved by him for payment in full) constituted the final settlement. The fact that the Constructing Quartermaster in that case evidenced his determination by the signing of a voucher, while here he evidenced it by signing a letter and a statement, would not, we think, distinguish the two cases.

In Fidelity & Casualty Co. of New York v. United States, etc., 70 F.(2d) 895, cited by the appellee, the Circuit Court of Appeals of the Sixth Circuit held that final settlement of a construction contract occurred on the day the Finance Officer issued his voucher in final payment, upon the certificate of the constructing quarter-

master. As authority for this holding, the case of Consolidated Indemnity & Ins. Co. v. W. A. Smoot & Co., supra, is cited, in which, as we have already pointed out, it was held that it was the determination of the constructing quartermaster which was the final settlement. However, the question before the Sixth Circuit was not whether the certificate of the constructing quartermaster constituted tne final settlement, but whether final settlement of the contract occurred on the day the Finance Officer issued his voucher or at the time the General Accounting Office made the final allowance to the contractor. Under the circumstances, the case does not aid us materially in determining what administrative officer had in charge the contract here involved.

In view of our conclusion that suit was commenced too late, it is not necessary to consider other questions.

The result is unfortunate. This subcontractor has apparently lost a substantial sum because he brought his suit two days later than it should have been brought. The surety has taken advantage of the limitation contained in the Heard Act for the bringing of suits, a limitation based upon the happening of an event (final settlement) often difficult of ascertainment and therefore giving rise to innumerable law suits. See note to 40 U.S.C.A. § 270. Congress, in recognition of the defects in this statute, has now amended it by the Act of August 24, 1935, c. 642, § 2, 49 Stat. 794, 40 U.S.C. § 270b (40 U.S.C.A. § 270b), thereby giving unpaid furnishers of labor or material the right to sue on the bond not sooner than "ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made," and not later than "one year after the date of final settlement of such contract." By giving to those furnishing labor and material the happening of one fairly definite event, of which they should have knowledge, to aid them in determining when to bring suit, the amendment should reduce the opportunity for loss due to misconception of the meaning of the term "final settlement" or to failure to accurately determine in advance of suit what particular officer had a contract administratively in charge.

The judgment is reversed, and the case remanded for further proceedings not inconsistent with this opinion.