## UNITED STATES, to Use of McHUGH ELECTRIC CO., v. THOMAS EARLE & SONS, Inc., et al.

### No. 6601.

Circuit Court of Appeals, Third Circuit.

Oct. 17, 1938.

Hugh M. Morris and Ivan Culbertson, both of Wilmington, Del., for appellant.

Josiah Marvel, Jr., and Marvel, Morford, Ward & Logan, all of Wilmington, Del., for appellees.

Before BUFFINGTON and BIGGS, Circuit Judges, and DICKINSON, District Judge.

BIGGS, Circuit Judge.

Upon February 6, 1933, the United States, through its Engineer Corps, entered into a contract with Triest & Earle, Inc., hereafter referred to as the contractor, for the construction of a movable span highway bridge across the branch channel of the Chesapeake and Delaware Canal at Delaware City, Delaware, and gave bond by the appellee United States Guarantee Company for the faithful performance of its contract as required by the Act of August 13, 1894, c. 280, 28 Stat. 278, as amended by the Act of February 24, 1905, c. 778, 33 Stat. 811, and March 3, 1911, c. 231, Sec. 291, 36 Stat. 1167; 40 U.S.C.A. § 270, commonly known as the Heard Act. This bond was conditioned in the usual terms for the benefit of material men and laborers.

On February 20, 1933, the contractor purchased from the appellant, McHugh Electric Company, for the sum of $7,250, certain electrical equipment required for the completion of the span. The equipment was duly delivered, was incorporated in the bridge, but of the purchase price the sum of $4,074.89 remains unpaid. The United States instituted no suit or suits under the Heard Act, and upon March 3, 1936, the appellant sued the contractor and the bonding company in the United States District Court for the District of Delaware to recover the unpaid balance. Upon the conclusion of the appellant's case, the learned trial judge directed a verdict in favor of the appellees upon the ground that the suit had not been commenced within one year from the date of final

settlement between the United States and the contractor as required by law.

The pertinent provisions of the Heard Act are as follows:

"If no suit should be brought by the United States within six months from the completion and final settlement of said contract, then the person or persons supplying the contractor with labor and materials shall * * * have a right of action * * * provided, That * * * it * * * shall be commenced within one year after the performance and final settlement of said contract, and not later * * *".

It is agreed by the parties that the work of the contractor in building the bridge was subject to the supervision and direction of the United States Engineer Office, a division of the War Department. It is undisputed that the contract was completed and the span was accepted on January 20, 1934.

On March 14, 1934, the United States Engineer Office in Philadelphia prepared a voucher at the head of which was printed "Public Voucher for Purchases, and Services other than Personal". Above this was typed the following words, "11th and Final Payment under Contract". This voucher, which in itself consisted of two pages, was addressed to the contractor and showed at the end of the accounting column upon the second page under the heading "Amount", the sum of $2,729.72, as "Balance withheld pending adjustment of liquidated damages ($1,829.72) and removal of sunken barge ($900.00)". It appears that the contractor claimed that additional payments totalling in excess of $25,000 were due it under the contract. The contractor signed the voucher with the notation, "Signed subject to claims for additional payment in accordance with our letter of 5/2/34." Following the two pages of the voucher proper and as part of the same exhibit, viz., No. 3, are three other pages which contain a "Summary of Work Earned and Paid to Contractor under the Contract", a "Summary of Findings Due to Delay in Completion of the Work", and finally certain comments by the Colonel commanding that portion of the Corps of Engineers charged with the completion of the bridge, in respect to conditions causing delay in the work which were without fault or negligence upon the part of the contractor. A total of sixty-one days appears upon this summary, during which work could not be carried on by the contractor due to unfavorable weather conditions. The document ends with the comment that on April 5, 1934, the sunken scow for which $900 was stated as being withheld upon the voucher had been removed and satisfactorily disposed of without expense to the United States.

Upon July 26, 1934, the United States Engineer Office sent a letter, received in evidence as Exhibit No. 4, to the Chief of Engineers of the United States Army in regard to the contractor's claim for extra compensation. This letter recommends that the voucher and the claim of the contractor be referred to the Comptroller General for "direct settlement" and further recommends that liquidated damages for sixty-one days at the rate of $50 per day "be remitted" in accordance with findings attached to the voucher and referred to above. The letter also recommends that the contractor's claim for additional compensation in the amount of $26,295.47 be disallowed.

Upon March 4, 1935, the General Accounting Office sent a certificate of settlement to the contractor stating that there was due from the United States to the contractor the sum of $3,979.72 and directing the sending of check and warrant in this sum to the contractor. The payment was made as directed.

The certificate of settlement refers to the amount of additional compensation claimed by the contractor which is stated to be in the sum of $29,954.62 and disallows $25,974.90 thereof, leaving a balance of $3,979.72, which is stated to be "payable to claimant". It then refers to the obligation of the contract requiring completion of the work within one hundred seventy-five calendar days and the provision for assessment of liquidated damages against the contractor at the rate of $50 for each day of delay. The certificate of assessment also states that it appears and the "contracting officer has so found" that sixty-one days' delay were due to certain facts beyond the contractor's control or reasonable anticipation and that therefore the contractor is "entitled to a remission of $3,050, being liquidated damages for sixty-one days' delay instead of $7,050, as claimed." The certificate also states that the contractor is "allowed the amount of $929.72 retained for unperformed details and pending final settlement since it is shown that all work has been satisfactori-

ly completed." The certificate concludes by stating that no portion of the remaining amount claimed by the contractor may be allowed to it for reasons which are stated thereafter in detail.

Now it should be noted that the sum of $3,979.72, paid to the contractor at some date after March 4, 1935, pursuant to the certificate of settlement, is equal approximately to the sum of two items, namely, sixty-one days remission of penalty for delay at the rate of $50 a day, or $3,050, plus $900 retained by reason of the sunken barge, referred to upon the voucher. Though it does not clearly appear from the record that the sum finally paid to the contractor under the certificate of settlement is composed of these two items, none the less we entertain little doubt that such is the case. It further appears from the certificate of settlement that the reasons given by the Comptroller for the disallowance of the balance of the contractor's claim are largely the reasons given for the disallowance of the claim in the United States Engineer Office letter of July 26, 1934, Exhibit No. 4, and that the remission by the Comptroller of the forfeit of $50 a day for failure to complete the work in time is precisely in accordance with the "Summary of Findings Due to Delay in Completion of the Work", constituting part of Exhibit No. 3, the voucher dated March 14, 1934.

■ The record does not contain any letter or document directly referring the question of the contractor's compensation to the Comptroller General's office. The letter of July 26, 1934, Exhibit No. 4, is not such a reference. The appellees' case therefore must rest upon a showing that the contents of Exhibits Nos. 3 and 4 constitute in fact a final settlement of the contract. This is true though the burden is upon the appellant to establish that it has satisfied the condition imposed by the Heard Act of bringing suit within a year from the date of final settlement. United States v. Kearns, D.C., 26 F.2d 235, 236; United States v. Scheurman, D.C., 218 F. 915; Baker Contract Co. v. United States, 4 Cir., 204 F. 390. The appellant contends that Exhibits Nos. 3 and 4 do not contain any administrative determination by the department of government in charge of the work constituting in fact a final settlement of the contract; that the certificate of settlement of the Comptroller General does constitute the final settlement.

The question presented for our determination is whether the suit at bar was brought within one year of the date of final settlement of the contract as provided by the Heard Act.

In Globe Indemnity Co. v. United States, 291 U.S. 476, at page 483, 54 S.Ct. 499, 78 L.Ed. 924, it was held that a determination made and recorded in accordance with established administrative practice by the officer or department in charge of the contract that the contract has been completed and the final payment is due fulfills the requirements of the Heard Act. In the cited case, the letter or endorsement from the department having the contract in charge, forwarding the claim of the contractor to the General Accounting Office, declared that the contract had been completely performed, stated the balance due after deducting an amount for the liquidated damages, declared that the claim had received administrative examination and was approved for the balance due as indicated and recorded the findings of the Department.

■ In the case at bar, though no forwarding letter or endorsement from the Engineer Office to the General Accounting Office is in evidence, none the less it appears from the voucher and its accompanying papers that the contract had been completely performed, and a stated balance is withheld. In our opinion the voucher itself constitutes proof of administrative examination and a final settlement of the account between the United States and the contractor and shows approval by the Engineer Office of the balance struck, which is final except for disposition of the sum withheld. The voucher and its accompanying papers constitute a record of the final settlement made by the Engineer Office with the contractor.

An examination of the letter of July 26, 1934, and its accompanying papers, constituting Exhibit 4, confirms the opinion which we have expressed. The letter refers to the findings of fact in respect to remission of sixty-one days' penalty for delay (the withholding of funds on account of the sunken barge being already disposed of by the comment of the District Engineer in the document accompanying the voucher) and states reasons why the contractor's claims for additional payments should be disallowed. It should be noted that the certificate of settlement issued by the General Accounting Office dis-

poses of the questions of remission of penalties for delay and the additional compensation for the contractor in the precise fashion recommended by the voucher and its accompanying papers and by the letter of July 26, 1934.

It is true that the contractor received, through the certificate of settlement issued by the Comptroller and its directions, $3,979.72, a sum larger than that retained under the voucher. We think, however, that this is unimportant. Certain adjustments, minor in their nature, between the United States and the contractor, remained to be made and the Engineer Office retained a sum of money sufficient to liquidate any further penalty which might be taxed against the contractor. In view of the sum retained no reason appears why the liability of the bonding company to the United States should not have been deemed to be discharged at the time of the execution of the voucher. Illinois Surety Co. v. United States, 240 U.S. 214, 218, 36 S.Ct. 321, 60 L.Ed. 609. In Globe Indemnity Co. v. United States, supra, at page 483, 54 S.Ct. at page 501, Mr. Justice Stone stated it to be the policy of the Heard Act to allow material men to bring suit with reasonable promptness following the determination of the fact that the United States would have no claim against the contractor's bond. He also stated that the date of final settlement fixing the time within which suits of laborers or material men must be brought should be capable of being ascertained with reasonable certainty and finality.

Globe Indemnity Co. v. United States governs the case at bar. All essential elements referred to in the cited case are present in the instant case. These have been enumerated earlier in this opinion and need not be repeated. Final settlement of the contract within the terms of the Heard Act must be attributed to the date of the voucher, viz., March 14, 1934, and not to the date of the certificate of settlement, viz., March 4, 1935. See, also, Illinois Surety Co. v. United States, supra; Consolidated Indemnity & Insurance Co. v. W. A. Smoot & Co., 4 Cir., 57 F.2d 995. The case of Lambert Lumber Co. v. Jones Engineering & Construction Co., 8 Cir., 47 F.2d 74, upon which the appellant strongly relies, must be read in the light of the Globe Indemnity Co. Case, and as was stated by the Circuit Court of Appeals for the Eighth Circuit in H. G. Christman Co. v. Michigan Gypsum Co., 85 F.2d 474, at page 477, is now authority " * * * only for the proposition that where the administrative officer or department having charge of the construction had declined to settle the contractor's claim, and had referred it to the General Accounting Office for settlement, the action of the latter would constitute the 'final settlement' within the meaning of the act."

Emphasis has been laid upon the fact that upon May 10, 1935, counsel for the appellant wrote a letter to Captain W. N. Thomas, Jr., of the United States Engineer Office, at Philadelphia, Pennsylvania, the author of the letter of July 26, 1934 heretofore referred to, which called Captain Thomas' attention to the provisions of the Heard Act requiring that suit be instituted within one year after the completion and final settlement of the contract. By the letter of May 10, 1935, counsel for the appellant requested that Captain Thomas inform counsel as to the date of final settlement. Upon May 14, 1935, Captain Thomas replied, "The date of final settlement of this contract by the General Accounting Office was March 4, 1935."

It should be noted that if we are correct in our conclusion that the day of final settlement was the date of the voucher, viz., March 14, 1934, the time for filing suit on behalf of the appellant had already elapsed under the provisions of the Heard Act. We are therefore of the opinion that no estoppel was worked against the appellees by Captain Thomas' letter of May 16, 1935, even assuming a statement made on behalf of the United States by the District Engineer would be binding upon the appellees. The statement contained in Captain Thomas' letter cannot serve as the determination of the date of final settlement. The date of final settlement of the contract must be determined under all of the circumstances of the case at bar and in the manner we have indicated.

The judgment of the court below is affirmed.