**UNITED STATES, for Use and Benefit of CENTRAL CEMENT FINISHING CO., Inc., v. CONTINENTAL CASUALTY CO.**

District Court, S. D. New York.

July 6, 1939.

Laughlin, Gerard, Bowers & Halpin, of New York City, for plaintiff.

McCormick & Eckel, of New York City (Andrew Eckel, of New York City, of counsel), for defendant.

GALSTON, District Judge.

This is an action under the Heard Act, 40 U.S.C. Sec. 270, 40 U.S.C.A. § 270.

On November 23, 1932, the United States, acting through the Assistant Secretary of the Treasury, entered into a contract with Robert G. MacKay, Inc., for the erection of a Post Office at Portchester, New York, for the agreed price of $159,-000. The Continental Casualty Company, the defendant herein, furnished the United States with a performance bond as required by the Heard Act, to secure the performance of the construction contract, and also conditioned upon the payment by the contractor for labor and material furnish-

ed by subcontractors for the construction. Act of August 13, 1894, 28 Stat. 278, as amended, Act of February 24, 1905, 33 Stat. 811, and March 3, 1911, 36 Stat. 1167, 40 U.S.C. § 270, 40 U.S.C.A. § 270.

The facts are not in dispute. The contractor having failed in the performance of the construction contract, the United States terminated the right of the contractor to proceed; and on or about October 11, 1933, authorized the defendant to complete the construction of the Post Office building. The defendant thereafter employed one R. W. Erickson to complete the construction.

The plaintiff and the intervening plaintiffs herein entered into sub-contracts with Erickson and under their respective contracts performed the services and furnished the materials alleged in their respective complaints. The complaint of the Central Cement Finishing Co., Inc., was filed on March 5, 1936; the intervening complaints of the Columbia Marble Works, Inc., and L. Del Turco Brothers, Inc., on March 14, 1936, and that of John J. Corkery on March 20, 1936. The only issue to be determined in this case is whether the action was begun within the statutory limitation.

U.S.C. Title 40, Sec. 270, 40 U.S.C.A. § 270, in effect provides that if no suit on the bond is brought by the United States within six months "from the completion and final settlement of said contract, then the person or persons supplying the contractor with labor and materials * * * shall be, and are hereby, authorized to bring suit in the name of the United States * * * Provided, That where suit is instituted by any of such creditors on the bond of the contractor it shall not be commenced until after the complete performance of said contract and final settlement thereof, and shall be commenced within one year after the performance and final settlement of said contract, and not later."

The plaintiffs contend that under the provisions of the foregoing statute their time did not expire until March 23, 1935, which was one year from the date of payment, whereas the defendant contends that the statutory period of one year terminated on December 6, 1935, for on December 6, 1934, the Acting Secretary of the Treasury forwarded the claim of the contractor to the General Accounting Office for direct settlement in a letter which stated that the contract had been completely performed and that the balance due was $24,738.32.

The letter of December 6, 1934, on the letter head of the Treasury Department, was signed by the Acting Director of Procurement and was addressed to the Secretary of the Treasury. Therein is set forth a report in detail, and a recommendation with respect to the contract in suit.

The report recites, after making reference to a deduction of $500 to reimburse the Government for the additional expense entailed: "that, after the deduction of this amount, authority be given for the payment of the balance due, viz, $24,738.32, from the appropriation on Post Office, Portchester, New York;" And the letter concludes with the statement that: "in view of the termination of the contract and completion of the work by the surety, that said contract be referred to the Comptroller General of the United States for direct settlement, as the equities existing between the contractor and the surety are unknown to the department." At the foot of the letter appears the following under the signature of the Acting Secretary of the Treasury: "Approved, damages assessed and contract referred to Comptroller General for direct settlement, December 6, 1934."

In a letter dated December 11, 1934, from the Treasury Department and signed by the Assistant Director of Procurement, addressed to the General Accounting Office, the latter office is notified: "Final settlement of this contract was authorized by the Department on December 6, 1934, but in view of the fact that said contract was terminated on September 29, 1933 and the work completed by the Continental Casualty Company, surety on the defaulted contractor's bond, the contract is referred to your Office for direct settlement, as the equities existing between the contractor and the surety are unknown to this Department."

It appears also that on December 6, 1934, the Treasury Department wrote to the defendant in effect stating that the Department on that day authorized "the final settlement of your contract * * * finding the balance due you of $24,738.32 * * *." This letter informed the defendant likewise that a representative of the Treasury Department had been directed to issue vouchers for the balance due and to forward them to the insurance company for signature, and that upon their return they would be certified and trans-

mitted to the Department for payment through the office of the Comptroller General. The voucher requested was accordingly executed by the defendant. On March 23, 1935, the General Accounting Office issued its certificate reciting that there was due from the United States to the Continental Casualty Company the aforesaid balance of $24,738.32 "for balance due for final settlement." The certificate contains the words "issue warrant and send check to claimant" and is directed to the Secretary of the Treasury.

The whole question is one of statutory construction involving the meaning of the term "final settlement". Whatever doubt existed in respect to the meaning of the term must be considered to be settled by Globe Indemnity Co. v. United States et al., 291 U.S. 476, 54 S.Ct. 499, 500, 78 L. Ed. 924. Mr. Justice Stone set forth an analysis of the Budget and Accounting Act which set up the General Accounting Office under the direction of the Comptroller General of the United States. C. 18, Sec. 304, 42 Stat. 24, 31 U.S.C. Sec. 44, 31 U.S. C.A. § 44. This act transferred to the office of the Comptroller General the powers and duties which theretofore had been exercised by the Comptroller of the Treasury and six auditors thereof, and authorized the heads and disbursing officers of executive departments to apply for the decision of the general accounting office upon any question involving a payment to be made by them. But it was emphasized in the opinion that the function which that office exercised was precisely that which had been previously exercised by the accounting office in the Treasury Department, and Mr. Justice Stone wrote: "Before, as after the Budget and Accounting Act, claims against the United States might be paid from the proper appropriation upon approval of the authorized officer of the department concerned, without previous settlement or audit by the accounting office. Before, as after, department heads or disbursing officers might ask the accounting office to render a decision upon a question involving payment to be made by them, in order to protect the disbursing officers and their bondsmen from liability for a payment unauthorized by law.

■ The term "final settlement" in the Heard Act was not intended to denote payment, but had been used to describe an administrative determination of the amount due upon the completion of the contract. In Globe Indemnity Co. v. United States, supra, it was said: "Similar determinations made by other departments before the enactment of the Budget and Accounting Act have repeatedly been held to constitute final settlement within the meaning of the Heard Act. Pederson v. United States for the use of Washington Iron Works [9 Cir.] 253 F. 622; United States for use of R. Haas Electric & Mfg. Co. v. Title Guaranty & Surety Co. [7 Cir.] 254 F. 958; Mandel v. United States for use of Wharton & N. R. Co. [3 Cir.] 4 F.2d 629; Antrim Lumber Co. v. Hannan [10 Cir.] 18 F.2d 548."

A question identical with that presented here is discussed in H. G. Christman Co. et al. v. Michigan Gypsum Co. et al., 8 Cir., 85 F.2d 474, 476, and it was said therein that since the decision of the United States Supreme Court in Globe Indemnity Co. v. United States, 291 U.S. 476, 54 S.Ct. 499, 78 L.Ed. 924, "certain questions relating to 'final settlements' under the Heard Act are no longer debatable."

■ Thus it seems now entirely well settled that by creating the General Accounting Office and transferring powers previously performed by the Treasury Department, Congress did not intend to disturb the construction of the statute under consideration. It is clear from the letter of December 6, 1934 that the contract was completed and that the amount owing was $24,738.32, and that determination was reached by the administrative head of the department which had entered into the contract in suit. There remained no controversy under the contract between the parties to the contract. The Government recognized and declared that the work had been completed and stated the amount owing. That was a final settlement within the purview of the authorities.

In accordance with the foregoing the complaint and the intervening petitions must be dismissed because the actions were not brought within the statutory period.