**REDEVELOPMENT AUTHORITY OF the CITY OF PHILADELPHIA, for the Use and Benefit of, Grinnell Fire Protection Systems Company, Inc., Appellee,**

**v.**

**FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Appellant.**

**No. 81–1632.**

United States Court of Appeals, Third Circuit.

Argued Nov. 12, 1981.

Decided Dec. 3, 1981.

---

Daniel Mungall, Jr. (argued), Stradley, Ronon, Stevens, & Young, Philadelphia, Pa., Michael J. Kearney, Jr., Weis & Weis, Pittsburgh, Pa., for appellant.

David G. Klaber (argued), Thomas E. Birsic, Kirkpatrick, Lockhart, Johnson & Hutchinson, Pittsburgh, Pa., for appellee Grinnell Fire Protection Systems Company, Inc.

Before SEITZ, Chief Judge, GARTH, Circuit Judge, and POLLAK,* District Judge.

## OPINION OF THE COURT

SEITZ, Chief Judge.

This is an appeal by Fidelity and Deposit Company of Maryland (F&D) from a final judgment of the district court granting the motion of appellee Grinnell Fire Protection Systems Company, Inc. for summary judgment. Jurisdiction in the district court was based upon diversity of citizenship, and this court has jurisdiction under 28 U.S.C. § 1291 (1976).

### I.

W.M. Anderson Company, as principal, and F&D, as surety, executed and delivered a Labor and Materials Payment Bond to the Redevelopment Authority of the City of Philadelphia (the Authority) in connection with a construction contract between Anderson and the Authority. The payment bond stated that "[i]n no event shall the surety be . . . subject to any suit, action or proceeding thereon that is instituted later than one year after the complete performance of said contract and final settlement thereof." Grinnell was a subcontractor of Anderson. Anderson currently owes Grinnell $30,227.12.

All adjustments made in the contract price between the Authority and Anderson were agreed upon by August 1978 with the exception of three items that were ultimately contained in the last change order. This change order was signed by Anderson on October 14. All three items, however, had been submitted to and considered by the Authority prior to August, and the Authority apparently reached a judgment before October 14 about what it considered should be the adjustments to the contract price because of those three items. On September 25, Anderson wrote the Authority inquiring whether the Authority would agree to process Anderson's account if Anderson withdrew certain other claims against the Authority. A schedule was submitted showing amounts and items in dispute, as well as amounts that the Authority had offered with respect to the three adjustments in the last change order. The letter indicates that Anderson was willing to accept the figures offered by the Authority, and they were ultimately encompassed in the change order. The Authority's construction manager approved the last change order on November 17, and the architect approved it on November 28, 1978.

On November 15, Anderson signed the Application and Certificate for Payment (the Certificate), which included the adjustments from the last change order. The architect approved the Certificate on December 20, and the Authority's construction manager signed it on January 2, 1979. Grinnell instituted this action for the balance on October 5, 1979.

---

* Honorable Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

The parties filed cross-motions for summary judgment. These motions posed the question whether Grinnell's suit against F&D was timely brought. The question was two-fold: (1) whether the Pennsylvania statute of limitations barred the suit for reason that it had not been brought within a year from the date on which Grinnell concluded the provision of labor and material; and (2) whether the suit was barred because F&D had not been sued within the limitation period contained in the performance bond. Grinnell argues that "final settlement" in the payment bond's limitation period refers to the date of execution by the architect of the Certificate. F&D asserts that "final settlement" refers to the time when the Authority determined the amount the contractor was entitled to receive under the contract and that this determination had been made by the Authority more than a year prior to the institution of the suit. The district court granted summary judgment in favor of Grinnell. F&D appeals.

## II.

Under controlling Pennsylvania law, the parties may agree on appropriate limitation periods. *See Insurance Co. of North America v. Carnahan*, 446 Pa. 48, 51, 284 A.2d 728, 729 (1971). F&D contends, however, that the contractual limitation provision, by its terms, was not intended to lengthen Pennsylvania's statute of limitations, which F&D argues began running after Grinnell's work was completed and accepted, and thus had run prior to the commencement of this action. F&D maintains that the language of the payment bond was not intended to change the period which Grinnell may have under statutory limitation provisions to bring suit, but merely establishes an additional prohibition against suits brought

more than one year after performance and final settlement. The Pennsylvania statute of limitations measurement is clear, definite, and based upon factors known to and under the control of the supplier, and F&D argues that there is no need to distort the definition of final settlement to serve policy considerations. In a word, F&D's contention is that final settlement is a term of art that does not have any particular significance to the Authority, to the obligors on the bond, or to the suppliers, and that under such circumstances, there can hardly be any meaningful effort to ascertain objective intent or purpose to be served by the clause.

■ We reject F&D's argument for two reasons. First, the terms of the payment bond only relieve F&D from liability on suits instituted more than one year after completion *and* final settlement of Anderson's contract with the Authority. It is undisputed that the phrase "final settlement" is a term of art with origins in federal statutory and decisional law, and occurred when the Authority administratively determined the amount it considered to be due to Anderson upon the completion of the contract.[1] We think that it is reasonable that the parties would agree to start the period of limitations from the date of that event, which Anderson, its surety, and its subcontractors are readily able to ascertain.

Second, F&D's construction would render the contractual limitation language a nullity. Its construction would determine the timeliness of suits on the payment bond strictly by reference to the limitation period set forth in Pennsylvania law, thereby making the contractual limitation provision superfluous.

1. F&D did not participate in the selection of the bond form. The Authority took the language for its payment bond from the federal and state precedent where the clause "complete performance of said contract and final settlement thereof" had come to have an accepted meaning. It took subparagraph 9.7.2 from the American Institute of Architect's (A.I.A.'s) form book. F&D asks us to take judicial notice of the fact that the one-year limitation period provided in the A.I.A.'s suggested bond form is measured from the date of the last work by the contractor. F&D thus argues that subparagraph 9.7.2 should not be used as a means for interpreting the payment bond clause taken from an entirely different context. We believe, however, that it is irrelevant to our review of the district court's decision in this case which bond form the A.I.A. suggests.

## III.

F&D's primary contention is that the district court incorrectly found that the contractual limitation period in the payment bond began when the architect determined the amount due Anderson (December 20, 1978) or when an Authority representative approved the Certificate (January 2, 1979). F&D raises three objections to this determination: (1) the stipulated record permits a conclusion on the basis of uncontroverted facts that the Authority's determination of the amount due Anderson had been made more than a year prior to the institution of this action; (2) even if such a conclusion is not permissible on this record, summary judgment is impermissible because the record is not sufficiently complete to support a determination as to when the Authority's approval was made; and (3) in any event, the conclusion of the Court below was not supported by the record. The basis of these objections is F&D's contention that the facts relating to the time of "final settlement" were not stipulated and cannot be obtained from documents. The information that F&D argues should have been before the district court includes evidence on how the Authority administratively determines the amount considered by it to be due to the contractor. However, F&D's arguments are irrelevant, and summary judgment was correct, if the district court correctly concluded that the architect possessed the authority to determine the amount due Anderson, because then evidence concerning the Authority's administrative procedures is immaterial.

Both parties agree that the district court correctly concluded that the principles of *Illinois Surety Co. v. United States*, 240 U.S. 214, 36 S.Ct. 321, 60 L.Ed. 609 (1916), apply in interpreting the term "final settlement". *See Commonwealth v. Globe Indemnity Co.*, 312 Pa. 244, 247–48, 167 A. 576, 577 (1933) (concluding after citing a number of federal cases, including *Illinois Surety*, "that 'final settlement' refers to the computation by the proper governmental authority of the amount which is finally owing under the contract"). Thus, there are two issues before us: (1) under *Illinois Surety*, does the architect possess the authority to determine finally and administratively the amount due Anderson? and (2) if so, is there any dispute as to a material fact that precluded the district court from establishing December 20, 1978 as the date of final settlement?

*Illinois Surety* involved a suit brought under a federal statute by laborers upon the payment bond of a public contractor building a post office. At issue was whether the plaintiffs commenced suit more than six months but less than one year after the date of complete performance and final settlement of the contract between the principal contractor and the government. In ascertaining the proper date of final settlement, the United States Supreme Court said:

> The pivotal words are not "final payment," but "final settlement," and in view of the significance of the latter term in administrative practice, it is hardly likely that it would have been used had it been intended to denote payment.
>
> . . . .
>
> We think that the words "final settlement" in the [federal statute] had reference to the time of this determination when, so far as the government was concerned, the amount which it was finally bound to pay or entitled to receive was fixed administratively by the proper authority. It is manifestly of the utmost importance that there should be no uncertainty in the time from which the six months' period runs. The time of the final administrative determination of the amount due is a definite time, fixed by public record and readily ascertained. As an administrative matter, it does not depend upon the consent or agreement of the other party to the contract or account. The authority to make it may not be suspended, or held in abeyance, by refusal to agree. Whether the amount so fixed is due, in law and fact, undoubtedly remains a question to be adjudicated, if properly raised in judicial proceedings, but this does not affect the running of the time for bringing action under the statutory provision.

*Id.* at 218–19, 221, 36 S.Ct. at 322–23. *Accord, Globe Indemnity Co. v. United States,* 291 U.S. 476, 54 S.Ct. 499, 78 L.Ed. 924 (1933).

The *Illinois Surety* Court interpreted final settlement as a definite, ministerial act performed in accordance with established administrative procedures by the person authorized to determine amounts due the contractor. The Court expressly stated that the Government's administrative determination of the amount did not depend upon the agreement of the contractor or upon whether that determination was ultimately correct. *See* 240 U.S. at 221, 36 S.Ct. at 323–24. It is the administrative determination alone that constitutes final settlement. The Court also recognized that the date of final settlement must be a clear and readily ascertainable event to ensure the protection of subcontractors' rights through adequate notice. The subcontractor typically has no direct contractual or other relationship with the owner and is, therefore, not generally privy to the status of negotiations and communications between the principal contractor and the owner. Having a clear date of final settlement helps to achieve one of the principal objectives to be accomplished through the posting of a payment bond— the financial protection of subcontractors, who are typically excluded from the protections offered by local mechanic's lien laws. *See Visor Builders, Inc. v. Devon E. Tranter, Inc.,* 470 F.Supp. 911, 919 (M.D.Pa. 1978).

In this case, the parties did not stipulate to a description of the procedure followed by the Authority to determine the amount due Anderson on the completion of the work. The administrative procedure by which the architect approves the work, however, is set forth in subparagraph 9.7.2 of the American Institute of Architect's (A.I.A.'s) General Conditions, which were incorporated into the contract. Subparagraph 9.7.2 provides:

Upon receipt of written notice that the Work is ready for final inspection and acceptance and upon receipt of a final Application for Payment, the Architect will promptly make such inspection and, when he finds the Work acceptable under the Contract Documents and the Contract fully performed, he will promptly issue a final Certificate for Payment stating that to the best of his knowledge, information and belief, and on the basis of his observations and inspections, the Work has been completed in accordance with the terms and conditions of the Contract Documents and that the entire balance found to be due the Contractor, and noted in said Final Certificate, is due and payable.

For purposes of judging the appropriateness of summary judgment, we must assume that the Authority had made its administrative determination as to what it would do with respect to the Anderson claims prior to September 25, 1978. It does not follow, however, that a final settlement as that term is used in the contract had been made by that date. We believe that the procedures set forth in the contract, especially subparagraph 9.7.2, fulfill completely and precisely the requirements for final settlement enunciated by the Court in *Illinois Surety.* The contract expressly delegates the authority to determine the amount of payments due Anderson under the contract: "The Architect shall determine the amounts owing to [Anderson] and shall issue Certificates of Payment in such amounts." Subparagraph 2.2.9 expressly provides that "[t]he Architect shall conduct inspections to determine the Dates of Substantial Completion and Final Completion . . . and shall issue a final Certificate for Payment." The architect is the representative of the Authority formally charged with the administrative responsibility and authority regarding final completion and the final amount due the contractor. Furthermore, the documentation provided by the Certificate satisfies the requirement that final settlement be at a "definite time, fixed by public record and readily ascertainable." *Illinois Surety,* 240 U.S. at 221, 36 S.Ct. at 324.[2]

While agreeing that *Illinois Surety* pronounces the controlling rule of law, F&D

---

**2.** F&D argues that a fair reading of both *Illinois Surety* and *Globe Indemnity* indicates that the

Court's statements concerning readily ascertainable dates were descriptive observations

seeks to distinguish the facts of *Illinois Surety* on two grounds. In *Illinois Surety*, the Secretary of the Treasury was in charge of the construction of a post office, and an architect exercised general supervision over the project. The Secretary was authorized to remit the whole or any part of the contract amount to the contractor. On the day that the architect was advised of the completion of the work, he recommended to the Secretary that a voucher should be issued to the contractor for a stated amount. On that same day, the Secretary approved this recommendation. The Supreme Court held that final settlement within the meaning of the statute occurred on that day.

F&D's first argument is that the role of the Certificate is far different in this case than any documentation issued in *Illinois Surety*: the Certificate is used here to obtain progress payments and then the final payment, and the Authority had decided long before its execution the amount it considered to be due Anderson. F&D also argues that the architect here did not have the authority to make the administrative determination of the kind and character contemplated by the Court, primarily relying on the fact that the Authority deleted from the contract much of the A.I.A.'s General and Supplementary Conditions that give the architect broad powers in the administration of a contract. We find little significance, however, in these distinctions.

Assuming, as we must, that the architect's role in approving the Certificate and thus making the final determination was minor and purely ministerial, we believe that it was necessary for final settlement.[3]

Second, F&D argues that neither *Illinois Surety* nor *Globe Indemnity* suggests that a contractual provision has any bearing on the time of final settlement. Those cases focus on the internal administrative governmental process by which the government made its determination as to the balance it considered due under the contract. We believe, however, that, although the administrative procedures necessary for determining the amounts due could have been defined by reference to administrative practice, here they were defined by the contract.

Thus, we hold that the architect's execution of the Certificate satisfies *Illinois Surety's* requirement for final settlement. We also conclude that the contractual procedures in this case constitute the sole administrative procedure to be followed in making a final settlement. We reach this conclusion for two reasons. First, under the contract, the architect, not the Engineering Department of the Authority, was the representative of the Authority empowered, at least formally, to determine final completion and the amounts due the contractor, including the final amounts. F&D argues that the substance of the procedure describ-

made by the Court with respect to the event which it determined to be the final settlement and were not necessary criteria for identifying the event. We disagree. The language of those cases indicates that, in establishing a date for final settlement, the Court chose one that was readily ascertainable. *See, e.g., Illinois Surety*, 240 U.S. at 221, 36 S.Ct. at 324 (quoted *supra*). In *Globe Indemnity*, the Court, in foreclosing a supplier's action because it had improperly assumed that the determination of the General Accounting Office rather than the Department of Interior was the time of final settlement for limitation purposes, stated:

> The policy of the statute to afford protection to the interests of laborers and materialmen would not be effected unless . . . the date of final settlement which fixes the time within which suit is permitted could be ascertained with reasonable certainty and finality. A determination, made and recorded in

accordance with established administrative practice by the administrative officer or department having the contract in charge, that the contract has been completed and the final payment is due, fulfills these requirements. 291 U.S. at 483, 54 S.Ct. at 501 (citations omitted).

3. F&D argues that the contention that the date of execution by the architect of the Certificate is the date of final settlement is subject to the same infirmity which led the Court in *Illinois Surety* to reject "final payment" as the equivalent of final settlement: The terms are different. It is certainly true that the parties could have used a more descriptive term than they did to show the intention that the one-year period start from the date of the Certificate. We are not persuaded, however, that the parties' failure to use more descriptive language undermines our interpretation of the words that they chose.

ed in subparagraph 9.7.2 was not followed in this case. Specifically, change orders with respect to additions to or deletions from the contract were prepared originally by the Engineering Department of the Authority and then submitted to the contractor for execution. The Authority's representatives determined the fact of completion and the amount payable to Anderson without participation of the architect. Presumably, F&D is arguing from this fact that the architect played an insignificant role. However, we have already determined that the ministerial nature of the architect's role is not insignificant and that his approval of the Certificate is necessary for final settlement.

Second, F&D's argument that final settlement had been made before September 25, 1978 fails to persuade us that a date could be discovered before the Certificate is approved by the architect which is a "definite time, fixed by public record and readily ascertainable" as required by *Illinois Surety*. The *ad hoc* procedure suggested by F&D effectively removes the requisite elements of reasonable certainty and finality from the decisionmaking process of the Authority and, therefore, deprives subcontractors and materialmen of any reasonable notice as to when the limitation period begins. In effect, F&D is asking this Court to deprive subcontractors such as Grinnell of the very bond protection that the Authority sought to provide for them and for which F&D was compensated. Its argument implies that Grinnell should be omniscient— that Grinnell should be able to sense when a decision is reached in the mind of a public official, perhaps not even an official named in the governing contract, or at a private meeting of public officials, and act accordingly at its peril. Such a position is not only contrary to law and fundamental fairness, but it defeats the strong public policy of protecting subcontractors on public projects. Moreover, the position advocated by F&D would encourage subcontractors to file suit against corporate sureties as soon as the subcontractors complete work on a site to be certain that they would not be foreclosed from recovery by an unknown and unascertainable "decision."

A grant of summary judgment should be upheld if it is apparent that no genuine issue of fact exists under the proper legal interpretation or analysis. *See Scooper Dooper, Inc. v. Kraftco Corp.*, 494 F.2d 840, 848 (3d Cir. 1974). Given the undisputed contractual terms present in this case, this standard is satisfied here, because no genuine issue of material fact exists. It is undisputed that Anderson did not submit its subparagraph 9.7.2 Certificate to the Authority until November 15, 1978 and that the architect approved and executed Anderson's Certificate on December 20. Since Grinnell's suit was instituted on October 5, 1979, within one year of the approval and execution date of Anderson's Certificate, its action was timely filed, and summary judgment for Grinnell was appropriate.

### IV.

The order of the district court granting Grinnell's motion for summary judgment will be affirmed.