UNITED STATES of America, for the Use of BANGOR ROOFING & SHEET METAL CO., a Corporation Duly Organized and Located at Bangor, Penobscot County, Maine,

v.

T. W. CUNNINGHAM, Inc., a Corporation Duly Organized and Existing at Brewer, Harold Colby of Bangor, Receiver of said Corporation, Both of Penobscot County, Maine, Peerless Casualty Company, a Corporation Duly Organized and Existing at Keene, in the State of New Hampshire and General Reinsurance Corporation, a Corporation Duly Organized and Existing in New York City, New York.

Civ. No. 763.

United States District Court
D. Maine, N. D.
April 24, 1956.

Seth May, Auburn, for plaintiff.

Mitchell & Ballou, Lawrence V. Jones, Bangor, for defendants.

CLIFFORD, District Judge.

This is an action brought under the Miller Act, 40 U.S.C.A. § 270a–270e. It was commenced by the filing of a complain with this Court on September 25, 1953.

The case arises out of a contract executed on August 17, 1950, between the plaintiff and T. W. Cunningham, Inc., one of the defendants in this action. It was in the nature of a sub-contract, stemming from a contract dated August 16, 1950, between T. W. Cunningham, Inc. (also referred to hereinafter as the prime contractor) and the United States of America, relating to the construction of buildings and utilities at Caswell, Maine.

The defendants, Peerless Casualty Company and General Reinsurance Corporation are sureties on the payment bond issued pursuant to the terms of the Miller Act. By their answer, these defendants admit that the sum of "$7,-800.11, balance of said subcontract price, and $385.78 for said additional items remains due and unpaid."

The only question for determination in this case, therefore, is whether or not the action was instituted within one year after the date of final settlement of the contract, as required by section 270b (b) of the Miller Act.

According to section 270c of the Miller Act, the date of final settlement as certified by the Comptroller General, is conclusive upon the parties. A recent amendment, enacted on May 11, 1954, has clarified the extent to which the certification of the final settlement date is conclusive. 41 U.S.C.A. § 321. Prior to the enactment of the amendment decisions of government officers rendered pursuant to the standard dispute clauses in government contracts were held to be final absent fraud on the part of such officials. United States v. Wunderlich, 342 U.S. 98, 72 S.Ct. 154, 96 L.Ed. 113. The purpose of the enactment was to overrule the Wunderlich decision. Under section 321, as amended, the determination by the government officials is final and conclusive "unless the same is fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, *or is not supported by substantial evidence.*" (Emphasis supplied.)

■■ Contrary to the contentions of the defendants, this Court is of the opinion that section 321 is applicable and controlling in this matter. The legislative history of the enactment clearly indicates that Congress intended to establish a general policy for review of decisions made by government officials. H. R. No. 1380, 83rd Congress, Second Session, 1954, U.S.Code Congressional and Administrative News 1954, p. 2191. And this policy "should not be interpreted in a niggardly manner." United States v. Lennox Metal Manufacturing Co., 2 Cir., 225 F.2d 302, 319.

In this matter, the Comptroller General certified August 28, 1952, as the date of final settlement. Suit was commenced approximately thirteen months later. Since this is beyond the time within which suit must be instituted, the defendants moved for summary judgment. This motion, however, was denied by this Court in an opinion and order dated October 28, 1955, because there was a genuine issue of material fact as to whether the date of final settlement was supported by substantial evidence.

During the hearing on the motion for summary judgment, both parties agreed that should the motion be denied, a hearing should be had on the merits in order to ascertain the proper date of final settlement. The entire matter, however, was submitted on various affidavits, exhibits and depositions, without a formal hearing.

The depositions were of Mr. E. V. Coons and Mr. O. Knowles Blanchard, both of whom were employed in the General Accounting Office of the United States. Mr. Blanchard, who first went to work with the office in 1935, had, at the time of the deposition, the status of attorney adviser. Since 1939, he has been constantly engaged in making determinations or recommendations as to the date of final settlement of government contracts for and on behalf of the Comptroller General. Over the course of many years, he has made "thousands" of determinations or recommendations of this kind.

The material facts, as found by this Court, are as follows: The contract between T. W. Cunningham, Inc., and the Government was to have been fully performed by April 5, 1951. The work, however, was not completed until February 15, 1952. But on December 27, 1951, the General Accounting Office sent a form questionnaire to the Corps of Engineers, U. S. Army, Office of the Division Engineer (hereinafter referred to as the Division Office), Boston, Massachusetts. The purpose of the questionnaire was to ascertain facts from which the date of final settlement could be determined.

The letter was not answered until August 29, 1952, around eight months later. On the preceding day, Mr. C. J. Murray, Chief, Construction Division of the Division Office, signed an office memorandum, addressed to Chief, Legal Branch of the same office. The memorandum stated the account to date, based on the contract and twelve change orders. It indicated a balance due the contractor of $20,984.-52, and an offsetting amount due the Government of $37,500 for liquidated damages for failure to complete the work on schedule, leaving a net amount due the Government of $16,515.48. On the basis of this memorandum, the Division Office recommended August 28, 1952, as the date of final settlement, explaining that on this date " * * * the amount of the balance administratively found due *the Government* from the contractor under the contract was approved by C. J.

Murray, Chief, Construction Division, New England Division, Corps of Engineers." (Emphasis in original.) The response to the questionnaire also contained information that the work was completed and accepted by the Government on February 15, 1952.

Subsequent to August 28, 1952, however, the Government reversed its previous position and waived its claim for liquidated damages by a modification to the contract, whereby February 15, 1952, and not some other prior date, was accepted as the completion date of the Caswell Project. Accordingly, a new account was prepared and approved, which reflected a balance due the prime contractor of $20,984.52.

The first manifestation of a different attitude on the part of the Government is a letter dated September 4, 1952, and signed by the contracting officer of the Division Office. It informed T. W. Cunningham, Inc., that the Caswell Project "has been accomplished in a satisfactory manner and is accepted as of February 15, 1952." A formal order, referred to as Change Order Thirteen, establishing February 15, 1952, as the date of completion of the contract, was approved by the Chief Administrative Assistant to the contracting officer on September 17, 1952. There is no direct evidence as to when Change Order Thirteen was executed except that it bears the date of January 2, 1952.

This order, modifying the contract, expressly provided for acceptance by T. W. Cunningham, Inc. Transmittal of Change Order Thirteen to T. W. Cunningham, Inc., for its approval, however, was not accomplished until September 24, 1952. On the day following its receipt, namely, on September 26, 1952, the prime contractor mailed its acceptance of the modification to the Division Office. September 26, 1952, fell on a Friday and, according to the affidavit of the Chief Executive Assistant to the Division Engineer, the acceptance was not received by the Division Office until Monday, September 29, 1952.

On the day following receipt of the prime contractor's approval of the modification of the contract, a final pay voucher was executed, authorizing payment to T. W. Cunningham, Inc., of $20,984.52, "as per estimate attached". It specifies that it was prepared in Boston on September 30, 1952.

Like the pay voucher, the pay estimate was designated "final" and both corresponded numerically—twentieth pay estimate and twentieth pay voucher. The pay estimate, however, was undated. But it does recite that the contract completion date of February 15, 1952, was determined "as per C. O. No. 13", referring to Change Order Thirteen. It also indicated that Mr. C. J. Murray had approved the account as the "Contracting Officer Representative". He is the same officer who had approved the account indicated by the August 28, 1952, memorandum, stating a balance due the government of $16,515.48.

The pay voucher, with the pay estimate attached, was mailed on the same day it was prepared to T. W. Cunningham, Inc., for its signature. These attached documents, properly signed, were returned to the Division Office on October 3, 1952 and payment was made to the prime contractor on October 9, 1952.

The General Accounting Office was first requested to provide a certificate of the date of final settlement of the Caswell Project by the Bridge Construction Corporation, sometime in the spring of 1953, well over a year after the completion of the contract. Before determining the date of final settlement, the General Accounting Office made further inquiry beyond its questionnaire of December 27, 1951. On July 29, 1953, it wrote to the Division Office and requested it "be furnished a copy of the document approved by C. J. Murray on August 28, 1952, together with any additional information which may be required to clarify the circumstances under which payment was made by the Government subsequent to a determination that a balance was due the Government".

The Division Office replied on August 4, 1953. Rather than enclosing the August 28, 1952, memorandum, the Division Office submitted a copy of the undated final pay estimate, the original of which had been attached to the final pay voucher of September 30, 1952, and identified it as the document having been "approved by C. J. Murray, Chief, Construction Division, on August 28, 1952." This letter also stated: "The pay estimate, approved by Mr. Murray, established the amount of the balance *due the contractor from the Government* as $20,-984.52. Second endorsement dated August 29, 1952, incorrectly indicated this amount to be due the Government from the contractor. The payment made by the Government on October 1952 (subsequent to the determination) was proper as the determination was for a balance due the contractor and not the Government." (Emphasis in original.)

Apparently satisfied by this explanation and without further inquiry or other evidence, the General Accounting Office, on August 13, 1953, certified August 28, 1952, as the date of final settlement of the Caswell Project.

Bangor Roofing and Sheet Metal Co., the plaintiff herein, commenced suit by its complaint of September 25, 1953. Upon information received from Colonel K. M. Pattee, Chief, Supply and Procurement Division of the Division Office in a telephone conversation, the plaintiff alleged in its complaint that September 30, 1952, was the date of final settlement. However, on October 6, 1953, the General Accounting Office issued a certificate to the plaintiff, specifying August 28, 1952, as the date of final settlement.

The August 28, 1952, memorandum, which the General Accounting Office had originally requested of the Division Office in hopes of clarifying the discrepancy between the pay voucher (payment to the contractor) and the account stated as of August 28, 1952 (balance due the Government), was finally received by it on January 12, 1955, nearly three years after the work had been completed.

 The Miller Act provides that suit must be brought within one year after the date of final settlement of the contract. 40 U.S.C.A. § 270b(b). And this date, as certified by the Comptroller General, is conclusive upon the parties. 40 U.S.C.A. § 270c. It is generally considered to be the date on which the administrative officer in charge of the contract determines and records the final amount due under the contract. Illinois Surety Co. v. United States to Use of Peeler, 240 U.S. 214, 36 S.Ct. 321, 60 L. Ed. 609; Globe Indemnity Co. v. United States, to Use of Steacy-Schmidt Mfg. Co., 291 U.S. 476, 54 S.Ct. 499, 78 L.Ed. 924; National Surety Corporation v. Reynolds, 8 Cir., 87 F.2d 865; R. P. Farnsworth & Co. v. Electrical Supply Co., 5 Cir., 112 F.2d 150, 130 A.L.R. 192. It does not denote payment but a final determination of every prerequisite to payment, such as satisfactory completion of the contract, a statement of the account, and approval of the account by an authorized officer. Of these prerequisites, the last is the most crucial. Usually, the officer with authority to approve the account is the contracting officer or his representative. Although there need not be any formal record of his approval, the General Accounting Office requires that it be evidenced by some memorandum or document. See United States, to Use of McHugh Electric Co. v. Thomas Earle & Sons, 3 Cir., 99 F.2d 898. And because his approval could possibly occur before any formal document is executed, the date of the approval is ordinarily a time which must be ascertained from the whole record of what transpired in reaching a settlement of the contract.

 The burden is upon the plaintiff to establish that it has satisfied the condition imposed by the Miller Act of bringing suit within a year after the date of final settlement. Cf. United States, to Use of O'Connell v. Kearns, 1 Cir., 26 F. 2d 235; United States, to Use of Pittsburg Planing Co. v. Scheurman, 218 F. 915. No more than a preponderance of the evidence is required to sustain this burden. But, ironically, in this action, the plaintiff is confronted by a certified statement of the date of final settlement, which, as noted previously, is conclusive upon the parties unless the decision by the government official was not supported by substantial evidence. 41 U.S.C.A. § 321. If the decision of the Comptroller General in certifying August 28, 1952 as the date of final settlement is supported by substantial evidence, then, of course, institution of this action was untimely and therefore it should be dismissed.

 In determining whether the decision of the Comptroller General was supported by substantial evidence, the record as a whole and not merely the evidence on which the official based his decision must be reviewed. Williams v. United States, 127 F.Supp. 617, 130 Ct. Cl. 435. And a perusal of the entire record of this case clearly convinces this Court that the date of final settlement, August 28, 1952, as certified, was not supported by substantial evidence. No contrary conclusion would be warranted in view of the testimony of Mr. O. Knowles Blanchard, the Comptroller General's assistant, whose duty it was to investigate, ascertain and recommend to the Comptroller the date of final settlement of Government contracts, that the entire record "casts considerable doubt on the facts as originally reported." And it was solely upon the "facts as originally reported" that the Comptroller General based his determination that August 28, 1952, was the date of final settlement of the Caswell Project. Indeed, he was obviously misled in his determination by erroneous information. Although it is apparent that both the Division Office and the Comptroller General regarded the undated final pay estimate as the document evidencing the final settlement of the contract, its identification by the Division Office as the document approved by Mr. C. J. Murray on August 28, 1952, was a careless misstatement of fact because not only are the two documents entirely dissimilar and, in fact contradictory, but also the undisputed evidence compels the conclusion that the undated final pay estimate was prepared and ap-

proved sometime between September 17 and 30, 1952. Therefore, the certificate is not conclusive upon the parties to this action, and, accordingly, the plaintiff may resort to other evidence by which to sustain his burden.

 An analysis of the facts of this case, in the light of the definition of "final settlement", as previously stated, persuades this Court that the date on which the final pay estimate was prepared and approved is the date of final settlement of the Caswell Project. It is the only document in this case which contains all of the information necessary to fulfill the requirements of a "final settlement". It specifies the date on which the contract was completed, states the account and indicates approval by an authorized officer, thereby placing the account in line for payment. Considering also that in each instance, the accounts indicated by the August 28, 1952, memorandum and the undated final pay estimate were approved by Mr. C. J. Murray, it is fair to infer that he was the only officer authorized to approve a "final settlement". His approval of the account, recorded in any manner, whether in minutes of a meeting, by some memorandum or offical document, such as a pay estimate, is an essential element of a "final settlement". And regardless of when the balance of the final account and to whom it was to be paid became obvious, there is no statement nor a record of its approval by Mr. C. J. Murray other than that indicated by the undated final pay estimate. Moreover, notwithstanding that an incorrect date was assigned to this document, this Court attaches considerable weight to the fact that the Comptroller General regarded the date on which the final pay estimate was prepared and approved as being the date of final settlement of the contract.

As indicated previously, the evidence compels the conclusion that the undated final pay estimate was prepared and approved sometime between September 17 and 30, 1952.

The salient fact in ascertaining the specific date on which the final account was approved by Mr. C. J. Murray is that the undated final pay estimate was attached to and made part of the final pay voucher, prepared in Boston on September 30, 1952, the day following receipt by the Division Office of the prime contractor's approval of Change Order Thirteen. Where these two documents are so closely related, the pay voucher being specifically dependent upon the pay estimate, it seems highly unlikely that the pay estimate would be perfected before the receipt of the fully executed change order. More likely, as the sequence of events and circumstances surrounding these documents lead this Court to conclude, the Division Office awaited the prime contractor's approval before taking any final action in authorizing payment of the balance administratively found due under the contract. The single fact that the pay estimate specified February 15, 1952, as the completion date "as per C. O. 13", indicating thereby recognition of the existence of a fully executed document, supports this conclusion. Also, while it is conceivable that a responsible administrative officer, fully aware of the consequences of the date of final settlement, would overlook recording the date of his final action, it is more probable under these circumstances that the final pay estimate was executed on the same day as the final pay voucher, and that the date on the pay voucher was also intended to apply to the pay estimate.

 Nevertheless, the Court does not decide any more than that both documents were not executed until after the approval of Change Order Thirteen by T. W. Cunningham, Inc., was received by the Division Office on September 29, 1952. Final settlement of the contract was not reached until after that time; not on August 28, 1952, as decided by the Comptroller General. Since this suit was commenced within one year after the date of final settlement, it was brought within the time specified by section 270b

(b). Therefore, pursuant to the agreement between the parties to this action, the plaintiff is entitled to judgment for the full amount of his claim.

It is therefore ordered, adjudged and decreed that the plaintiffs recover of the defendants the sum of $8,185.89, with interest thereon from October 17, 1951, plus costs to be taxed, and that plaintiffs have execution therefor.