WESTINGHOUSE ELECTRIC SUPPLY CO., A DIVISION OF WESTINGHOUSE ELECTRIC CORPORATION, A CORPORATION, APPELLEE, V. JACK BROOKLEY, DOING BUSINESS AS BROOKLEY ELECTRIC, APPELLEE, IMPLEADED WITH AMERICAN CASUALTY COMPANY, A CORPORATAON, APPELLANT.

127 N. W. 2d 465

Filed April 10, 1964.   No. 35612.

Herbert E. Story, Robert C. Oberbillig, and Wear, Boland, Mullin & Walsh, for appellant.

Crawford, Garvey, Comstock & Nye and James R. McGreevy, for appellee Westinghouse Electric Supply Co.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

MESSMORE, J.

This action was brought by Westinghouse Electric Supply Company, a corporation, plaintiff, against Jack Brookley doing business as Brookley Electric, and the American Casualty Company, a corporation, defendants, to recover the cost of material furnished by Westinghouse Electric Supply Company to Brookley Electric on a public works contract bonded by the American Casualty Company for the benefit of all persons, firms, or corporations who or which might furnish any materials or perform any labor for or on account of the construction to be performed under the construction contract and any amendments thereto, and they, and each of them, were made obligees thereunder with the same force and effect as if their names were written therein as such, and they and each of them might sue thereon, dated March 18, 1957, signed for Brookley Electric by Jack Brookley, and American Casualty Company by Willard W. Weed, attorney in fact. Such a bond is provided for under section 52-118, R. R. S. 1943.

A jury was waived and trial was had to the court. The court found that on June 18, 1958, certain additional

work remained to be performed by Jack Brookley for Norris Rural Public Power District on a Rural Electrification Administration project designated Nebraska 77 AL Norris, Section 4; that the amount ascertained to be due Jack Brookley was conditioned on the performance of the additional work by him; that on June 18, 1958, the balance due Jack Brookley under the terms of his contract in the sum of $9,684.50, was not in line for payment; that although there was no stated reservation concerning the amount due Jack Brookley under the terms of his contract, Raymond H. Reed & Co., Inc., consulting engineers and agents for Norris Rural Public Power District, on June 24, 1958, issued written directions to Jack Brookley setting out the additional work to be performed by him, and that there was an actual withholding of the entire amount due Jack Brookley under the terms of his contract in the sum of $9,684.50 until after such additional work was actually completed by Jack Brookley; that such additional work as Jack Brookley was directed to complete by terms of a letter addressed to him on June 24, 1958, by Raymond H. Reed & Co., Inc., consulting engineers and agents for the Norris Rural Public Power District, was completed sometime after July 22, 1958, and sometime after that date the balance due Jack Brookley under the terms of the contract in the amount of $9,684.50, became liquidated and due in final payment of the contract; that the plaintiff's action was commenced prior to the expiration of 1 year from final settlement of the contract between the Norris Rural Public Power District and Jack Brookley; that plaintiff's failure to expressly plead such fact was not a fatal defect under the law and circumstances of this case; and that the plaintiff was entitled to have and recover from both defendants the principal sum of $18,806.01, with interest thereon at the rate of 6 percent per annum from the due date of July 2, 1958, and a reasonable fee for plaintiff's attorneys fixed in the

amount of $2,500, and costs of suit. Judgment was rendered in the amounts aforesaid for the plaintiff.

The American Casualty Company's motions for new trial were overruled. The defendant American Casualty Company appealed.

The plaintiff is a corporation duly organized and existing under the laws of Pennsylvania, and qualified to do business in Nebraska. The defendant Jack Brookley, doing business as Brookley Electric, is a resident of Waterloo, Nebraska, and the defendant American Casualty Company is a corporation engaged in the business of writing bonds for a consideration. On March 18, 1957, Brookley Electric as principal and defendant American Casualty Company, as surety, executed a contractor's bond to Norris Rural Public Power District, wherein the defendants jointly and severally agreed to pay all persons working on or supplying labor or materials for use in the construction of project Nebraska 77 AL Norris, Section 4.

The plaintiff's amended petition alleged that on November 30, 1956, plaintiff was requested to furnish quotations to Jack Brookley relating to materials for use in construction of a substation for Norris Rural Public Power District at Beatrice, Nebraska; that on or about March 20, 1957, Jack Brookley verbally instructed the plaintiff to order the materials for his use on the project known as Nebraska 77 AL Norris, Section 4; that between the dates of May 17, 1957, and August 6, 1958, plaintiff furnished materials which were used on such project of the agreed fair and reasonable value of $37,-024.44; that on June 11, 1958, Jack Brookley paid $10,000 on the account, and on August 18, 1958, made a second payment of $8,000; that on August 6, 1958, plaintiff issued three credits on the account in the sums of $15, $25.92, and $177.51, leaving a balance due and owing plaintiff in the amount of $18,806.01, no part of which had been paid; and that on July 31, 1958, Norris Rural Public Power District finally accepted the substation located

at Beatrice, and approved the construction of the same so that the aforesaid balance of $18,806.01 became due and owing the plaintiff. The prayer was for such amount with interest at 6 percent per annum from the overage due date of January 1, 1958, a reasonable attorneys' fee, and costs of suit.

The answer of the American Casualty Company admitted the identity of the parties here involved and the contractor's bond as pleaded by the plaintiff; alleged that the final settlement of the contract between Jack Brookley, doing business as Brookley Electric, and the Norris Rural Public Power District was made more than 1 year prior to the filing of this action; and denied each and every other allegation of the plaintiff's amended petition.

The plaintiff, for reply to the answers of Jack Brookley, doing business as Brookley Electric, and the American Casualty Company, denied each and every allegation contained in each of such answers except those which constituted admissions made by the plaintiff in its amended petition.

For convenience we will refer to the Westinghouse Electric Supply Company as plaintiff; to the defendant American Casualty Company as defendant; to Jack Brookley, doing business as Brookley Electric, as Brookley or Brookley Electric; to the Norris Rural Public Power District as the district; and to other persons by their names.

The district entered into contracts for the engineering of, the financing of, and the construction of electric transmission lines in the vicinity of Beatrice. The engineering contract between the district and Raymond H. Reed & Co., Inc., engineers, of Columbus, Nebraska, was executed November 19, 1956. The financing or loan contract was between the district and the United States government, acting through the Administrator of the Rural Electrification Administration. The construction contract between the district and Brookley Electric in the original sum of $93,000 was executed by the contrac-

tor Brookley and the district on March 18, 1957.

We have heretofore set forth in substance a part of the contractor's bond executed by the plaintiff in the sum of $93,000 in favor of the district, the United States of America, and all persons, firms, and corporations furnishing materials for or performing labor on the construction contract between Brookley Electric and the district, which contract was designated by the Rural Electrification Administration as project Nebraska 77 AL Norris, Section 4.

After introducing the itemized statement of account concerning materials sold by the plaintiff to Brookley Electric on the dates shown in an exhibit and which were used on the district's project known as Nebraska 77 AL Norris, Section 4, and the balance shown on this exhibit of $18,806.01, which remained unpaid to the plaintiff; and after introducing another exhibit which is the contractor's bond, the plaintiff rested. The defendant moved for dismissal for the reason that the plaintiff failed to sustain the burden of proof upon the material allegations of its petition and to show that the action was brought within 1 year from the final settlement of the contract. This motion was overruled.

An exhibit was introduced by the defendant which was a request for additional construction costs and requested the Rural Electrification Administration for $3,845 increase in the construction loan contract. This request was made on May 31, 1958, accepted by the district and Jack Brookley on June 20, 1958, and approved by Raymond H. Reed on June 11, 1958.

On June 11, 1958, Raymond H. Reed, the president of Raymond H. Reed & Co., Inc., the engineering firm for the district, certified to the district's financing agency, the Rural Electrification Administration, Washington, D. C., as to the completion of the construction contract between Brookley and the district. The certification, on a printed Rural Electrification Administration form, contained this language:

"I, the undersigned Engineer of the above-designated Rural Electrification Administration Project do hereby certify that:

"1. The construction provided for pursuant to Construction Contract No. 58 dated March 12 1957, including all approved amendments, (hereinafter called the 'Project') between Norris Rural Public Power District ('Owner'), and Brookley Electric ('Contractor') has been completed as of May 13 1958, and is in all respects in strict compliance with the provisions of the Loan Contract and the Construction Contract, including all plans, specifications, maps, and drawings and all modifications thereof. * * *

"7. The total cost of the Project as completed is Ninety Six Thousand, Eight Hundred Forty-Five and no/100 Dollars ($96,845.00). The Project consists of facilities shown on the Statement of Construction which is true and correct and which is attached hereto and made a part hereof."

On June 11, 1958, Raymond H. Reed, president of Raymond H. Reed & Co., Inc., the consulting engineering firm for the district, certified to the United States Department of Agriculture, Rural Electrification Administration, as follows: "I certify that to the best of my knowledge and belief the attached final inventory correctly shows the total number and character of assembly units installed and removed by the Contractor and that the net amount of $96,845.00 due the Contractor, as shown above, is true and correct."

On June 20, 1958, the district and Brookley Electric accepted the certification by the engineering firm. Immediately above the certification of the engineer and on the same Rural Electrification Administration printed form this language appears: "F NET AMOUNT DUE CONTRACTOR (in making final payment to Contractor, the net amount due the Contractor as shown by this Certification, will be reduced by the sums, if any, due the Owner for liquidated damages, payment made to

date, or other sums which the Owner has the right to retain under the terms of the Contract, and signature by all parties does not preclude the retention by the Owner of such amounts.)"

As of June 18, 1958, the date of the district's board meeting, Brookley Electric had not completed all of the work under the construction contract between it and the district. The minutes of the June 18, 1958, board meeting show as follows: "The manager presented final close out documents of the District's AL Section 4 construction contract and advised that the delay for completion of the contract was due to bad weather, and the District's inability to obtain delivery of oil circuit breakers, that it was necessary for the contractor to have to complete the construction. Upon motion duly made by Herman Damkroger, seconded by David G. Warner, and unanimously carried, the final close out documents of the District's AL Section 4 construction contract were approved and extension of time granted to Brookley Electric Company to complete the contract without a penalty, and the officers of the District were authorized to execute the final close out documents in the form submitted to this meeting."

On June 24, 1958, Raymond H. Reed & Co., Inc., the engineering firm for the district, addressed a letter to Jack Brookley of Brookley Electric, and listed work items to be performed by the contractor at five different substations. These work items were referred to as "cleanup" items, and were a result of the final inspection of the construction project which was held on June 20, 1958. This letter was over the signature of Owen R. Gibbs, the chief engineer in charge of construction for Raymond H. Reed & Co., Inc., and who was also the supervising resident engineer for such company on the Brookley construction contract with the district. Certain items were also listed in this letter which were to be performed by the district. The work items to be performed by Brookley were at five different substa-

tions.  Brookley testified that the clean-up work covered a period of 30 days to 6 weeks; that there was work to be done by the district before the clean-up work could be done by Brookley Electric; that he received the final payment for his work on August 12, 1958; that the clean-up work was done in the latter part of July; that the places involved covered quite a radius, being Kramer, Raymond, Davey, Adams, and Panama; and that he requested payment sometime after the 25th and before the 30th, or the last week in July.

On August 12, 1958, the district mailed a letter to Brookley Electric and enclosed its check No. 968 in the amount of $9,684.50, payable to Brookley, representative of final payment to Brookley Electric.

Brookley testified that he gave a check in the amount of $16,975.44 to Mr. Hay, the credit manager of the plaintiff, to hold, at the time he asked Mr. Hay to sign the lien waiver.  An exhibit, being a waiver and release of lien, shows the following:  That Westinghouse Electric Supply Company, the materialman, furnished Brookley Electric electrical material for use in the construction of a project belonging to the district and designated by the Rural Electrification Administration as Nebraska 77 AL Norris, Section 4; that the undersigned, Westinghouse Electric Supply Company, for and in consideration of $1, and other good and valuable consideration, the receipt whereof was acknowledged, did thereby waive and release any and all liens, or right to or claim of lien, on the above-described project and premises, under any law, common or statutory, on account of labor or materials, or both, theretofore or thereafter furnished by the undersigned to or for the account of Brookley Electric for the said project.  This waiver and release of lien was signed on June 18, 1958, by R. T. Hay, credit manager for the plaintiff.

The receipt for $9,684.50 was satisfaction in full of all claims of Brookley under the construction contract between Brookley and the district dated March 18, 1957,

as amended, and as complete performance by the district of all obligations to be performed by it pursuant thereto. The total amount received, including the final payment, was $96,845. The receipt was signed by Brookley.

On July 22, 1959, the unpaid balance of the Brookley Electric account with the plaintiff, a subcontractor, for materials sold to Brookley on the construction project for the district was in the sum of $18,806.01.

The plaintiff commenced this action against Brookley Electric and its surety company on July 22, 1959.

The engineering service contract dated November 19, 1956, between the district and Raymond H. Reed & Co., Inc., provided, in Article V, section 1, as follows: "The Engineer shall prepare and, within twenty (20) days after the completion of construction of the Project by the Contractor, submit to the Owner and the Administrator for approval complete and detailed final documents, including without limitation, final inventory, final maps, final circuit phase diagram, certificates of completion of the Project, statement of construction, Contractor's Affidavit, Waivers and Releases of Lien, Engineer's final report, and statement of all amounts payable by the Owner under all Construction Contracts, Engineering Contracts, Clearing Contracts and Materials Contracts."

In the minutes of the meeting of the judiciary committee of the Nebraska Legislature which was held on March 21, 1955, to consider Legislative Bill 446 which was finally enacted as sections 52-118, 52-118.01, and 52-118.02, R. R. S. 1943, it was stated during the course of the discussion that Legislative Bill 446 was an amendment that would simply adopt or change the Nebraska statutes to conform to the federal statutes.

James L. Rich, Jr., testified by deposition that he was engaged in the engineering business with Raymond H. Reed - Wurdeman and Associates; that his duties included handling all of the closing out of the various projects, also plans and specifications on projects;

that he was so engaged in 1956 and up to the time his deposition was taken; that he made the final documents on the contract between Brookley and the district; that he was familiar with the contract; that he started to work on closing out the contract during May 1958; and that his first procedure was to make the wash-out amendment to add the necessary items that were not in the original contract. He identified the final wash-out amendment that was prepared for the contract to add the necessary items that were not in the original contract. He further testified that Mr. Reed's signature appeared thereon; and that after that, the Rural Electrification Administration form 254 was prepared. This is a construction inventory, and Mr. Reed's signature also appears on this document. Thereafter he prepared Rural Electrification Administration form 187 which is a certificate of completion on which Mr. Reed's signature also appears. These documents were mailed to Brookley for his signature, along with blank waiver and release forms and affidavit of contractor forms to be filled out by him and signed. He further testified that before the contract could be closed out, the Rural Electrification Administration required waivers and releases of liens and affidavit of the contractor. On redirect examination this witness testified that he entered into the procedure as outlined for the purpose of ascertaining what was due the contractor under the terms of the contract.

The defendant assigns as error that the court erred in finding that the cause of action was not barred by the limitation of 1 year from the date of the final settlement of the contract; that the court erred in finding that the burden of pleading and proving that this action was brought within the statutory time was not on the plaintiff; that the findings of fact were not supported by the evidence and were contrary thereto; and that the court erred in overruling the motion of the defendant to dismiss the action at the close of the testimony.

The defendant contends that the burden of pleading and proving that the cause of action was brought within the statutory period was on the plaintiff, and the plaintiff has failed to either plead or prove this material and essential allegation.

The following are applicable.

Section 52-118, R. R. S. 1943, imposes the duty upon the state and public boards to take a bond for the benefit of materialmen before entering into a construction contract to which the general provisions of the mechanics' lien law do not apply.

Materialmen have the statutory right to sue on the contractor's bond. A bond such as the one in suit is a contract made for the benefit of parties furnishing labor and materials in performance of the principal contract, and such persons have a right to sue thereunder in their own names.

Section 52-118.02, R. R. S. 1943, provides: "Every suit instituted under the provisions of sections 52-118 to 52-118.02 shall be brought by any person entitled to the benefit of this action, but no such suit shall be commenced after the expiration of one year after the date of final settlement of the principal contract. The action shall be in the name of the party claiming the benefits of this action."

In 34 Am. Jur., Limitation of Actions, § 424, p. 335, it is said: "It is an established principle of pleading that the plaintiff need not in his pleading anticipate or negative possible defenses, and accordingly, as a general rule, a plaintiff, in order to recover, need not affirmatively show in his complaint, declaration, petition, or statement of claim, that the cause of action set forth therein is not barred by the applicable statute of limitations, at least, where the bar of the statute does not appear on the face of the plaintiff's pleading, but may leave it to the defendant to assert the bar of the statute at the appropriate stage of the proceeding." See, also, United States

of America, for the Benefit and Use of Berkowitz v. Frankini Constr. Co., 139 F. Supp. 153.

The defendant's contention that the plaintiff was required to plead that the action was brought within the statutory time cannot be sustained.

The accrual of a cause of action means the right to maintain and institute a suit, and whenever one person may sue another, a cause of action has accrued and the statute begins to run, but not until that time. So whether at law or in equity, the cause of action arises when, and only when, the aggrieved party has a right to apply to the proper tribunal for relief. See, Bend v. Marsh, 145 Neb. 780, 18 N. W. 2d 106; Dewey v. Dewey, 163 Neb. 296, 79 N. W. 2d 578; Fraser v. Temple, 173 Neb. 367, 113 N. W. 2d 319.

It is the contention of the defendant that the time of final payment under the contract is not pertinent; and that the final settlement of a contract for a public improvement as used in section 52-118.02, R. R. S. 1943, means an administrative determination by a proper authority of the amount due on the contract, and is conclusive.

The defendant cites 91 C. J. S., United States, § 113, p. 280, as follows: "A final settlement within the meaning of the statute is an administrative determination by proper authority of the amount due, regardless of the consent or agreement of the contractor or others. In order to constitute a final settlement there must be an unconditional and final ascertainment of the amount due. Its finality is not affected, however, by subsequent consideration by the administrative officer or department in charge of minor items, * * * or by stipulations by the contractor to keep the work in repair, or by the fact that full payment has not been made and the balance may be subject to change, or that the accounts of the officer making the settlement are subject to audit, or approval of the government's general accounting office."

The statute requiring that the contractor on public

improvement work give a bond was patterned after the federal law known as the Miller Act (40 U. S. C. A., §§ 270a-270e). Therefore, the defendant relies on decisions of the federal courts, citing United States of America for the Use of Bangor Roofing & Sheet Metal Co. v. T. W. Cunningham, Inc., 141 F. Supp. 205. This was an action brought under the Miller Act, 40 U. S. C. A., §§ 270a-270e. The case arose out of a contract between the plaintiff and defendants. It was in the nature of a subcontract, stemming from a contract between T. W. Cunningham, Inc., referred to as the prime contractor, and the United States of America, relating to the construction of buildings and utilities. The defendants, Peerless Casualty Company and General Reinsurance Corporation, were sureties on the payment bond issued pursuant to the terms of the Miller Act. The question for determination was whether or not the action was instituted within 1 year after the date of final settlement of the contract, as required by section 270b (b) of the Miller Act. The court said that a decision by the government officials was final and conclusive unless such decision was fraudulent, capricious, arbitrary, or so grossly erroneous as necessarily to imply bad faith, or was not supported by substantial evidence. The court went on to say: "The Miller Act provides that suit must be brought within one year after the date of final settlement of the contract. * * * It is generally considered to be the date on which the administrative officer in charge of the contract determines and records the final amount due under the contract. * * * (Cases are cited.) It does not denote payment but a final determination of every prerequisite to payment, such as satisfactory completion of the contract, a statement of the account, and approval of the account by an authorized officer. * * * Usually, the officer with authority to approve the account is the contracting officer or his representative. * * * An analysis of the facts of this case, in the light of the definition of 'final settlement', as previously

stated, persuades this Court that the date on which the final pay estimate was prepared and approved is the date of final settlement * * *. It is the only document in this case which contains all of the information necessary to fulfill the requirements of a 'final settlement'. It specifies the date on which the contract was completed, states the account and indicates approval by an authorized officer, thereby placing the account in line for payment."

In United States Casualty Co. v. District of Columbia, to Use of North American Cement Corp., 107 F. 2d 652, the court said: "Under the Heard Act 'final settlement', not completion of performance, is the crucial event for starting the statutory periods. This does not mean 'payment' or 'agreement'. Nor, as will appear, does it involve absolute administrative finality, if that can occur short of or even with payment. Instead, the Supreme Court has held that it means 'A determination, made and recorded in accordance with established administrative practice by the administrative officer or department having the contract in charge, that the contract has been completed and that the final payment is due * * *.' * * * The determination, therefore, which is intended and controlling has the following characteristics in the usual case: it is one made by the administrative officer or department having charge of the work, not generally by the purely financial division of the Government; it is made in accordance with established administrative routine, if such exists in relation to the particular matter; usually it is recorded in like accordance with routine; it is a determination both that the work has been completed and that a liquidated sum is due in final payment of all claims under the contract; * * *."

In United States, for Use and Benefit of F. B. Spear & Sons v. Arthur Storm Co., 101 F. 2d 524, the appeal consolidated three suits upon contractors' bonds. The appellee surety company, in compliance with 40 U. S. C. A., § 270, bonded the Storm Company as principal for

the completion of contracts for the construction of public buildings at certain conservation camps. The three contracts related to certain Michigan camps. Jury was waived and trial was had to the court. The court dismissed the suits upon the ground that action had not been started within 1 year after performance and final settlement of the contract as required by statute. The court said: "Final settlement is not synonymous with final payment. It precedes payment and denotes the proper administrative determination with respect to the amount due." The court further said, quoting with approval from Illinois Surety Co. v. United States, 240 U. S. 214, 36 S. Ct. 321, 60 L. Ed. 609: " 'The pivotal words are not "final payment," but "final settlement," and in view of the significance of the latter term in administrative practice, it is hardly likely that it would have been used had it been intended to denote payment. * * * We think that the words "final settlement" in the act of 1905 had reference to the time of this determination when, so far as the government was concerned, the amount which it was finally bound to pay or entitled to receive was fixed administratively by the proper authority.' " The court also quoted with approval from Globe Indemnity Co. v. United States, 291 U. S. 476, 54 S. Ct. 499, 78 L. Ed. 924, as follows: " 'A determination, made and recorded in accordance with established administrative practice by the administrative officer or department having the contract in charge, that the contract has been completed and that the final payment is due, fulfills these requirements.' " The court went on to say: "The decisive date, therefore, is not the date of payment, but the time when the administrative officer having the contract in charge made and recorded the determination of the amount due." See, also, National Surety Corp. v. Reynolds, 87 F. 2d 865.

The plaintiff cites the case of R. P. Farnsworth & Co. v. Electrical Supply Co., 112 F. 2d 150, 130 A. L. R. 192, on rehearing, 113 F. 2d 111. It would serve no

useful purpose to set forth the facts in the original case nor the holding of the court therein for the reason that the facts in the instant case are so dissimilar that the above case is not controlling. The court announced the rule as follows: "By 'final settlement' is not meant final payment by or to the United States of what is owing, but the administrative determination by the officer having the execution of the work in charge that it has been performed and his finally fixing the amount due to be paid by or collected for the United States; that payment may be held up or refused in the General Accounting Office does not alter the date of the 'final settlement' of the contract." It will be noted that the above rule is not unlike the principal rule announced in the cases cited by the defendant.

In the same case on rehearing, 113 F. 2d 111, the plaintiff sets forth the following language from the opinion: "So long as the United States contends that contractor must do something more and is holding back an amount, large or small, to secure full performance, there is no 'final settlement' of the contract within statute limiting time for subcontractor's suit on contractor's bond given United States to one year after final settlement." In addition to the above language it was said in the opinion: "It is urged that our language: 'Not until the wall was rebuilt and the order passed to pay the $82.80 was there a final settlement of the contract,' means that payment or an order to pay is requisite to a final settlement. We do not so hold, but we say that there must be an unconditional and final ascertainment of the amount due." The above cases cited by the plaintiff are not in point considering the facts and circumstances of the instant case.

Other cases cited by the plaintiff primarily have to do with the discussion of completion, acceptance, and payment relating to contracts, but not with the final settlement in regard thereto, and therefore are not in point in the instant case.

In the instant case there was no statement that the determination made June 11, 1958, was not a final settlement, and there is no evidence that any other determination was made subsequent to that time.

Where a statute grants a new remedy, and at the same time places a limitation of time within which the person complaining must act, the limitation is a limitation of the right as well as of the remedy, and, in the absence of qualifying provisions or saving clauses, the party seeking to avail himself of the remedy must bring himself strictly within the limitations. See, City of South Omaha v. McGavock, 72 Neb. 382, 100 N. W. 805; Ray v. Sanitary Garbage Co., 134 Neb. 178, 278 N. W. 139.

The plaintiff had a cause of action against the defendant on June 11, 1958, and a limitation of 1 year commenced to run from that date, so this action, brought on July 22, 1959, was barred by the statute of limitations. The record discloses that the engineer in charge of the work determined that the work under the contract was completed on May 13, 1958. He also determined the amount due on the contract on June 11, 1958. Such determination was accepted and approved in writing by the contractor and the district on June 20, 1958. The board of directors of the district authorized the closing out of the contract on June 18, 1958, and settled all matters relating to the extension of time, the waiver of liquidated damages, etc. The plaintiff filed a lien waiver and accepted a check from the contractor on June 18, 1958. There was no reservation of any kind in the settlement agreement as to additional work or additional compensation.

In the light of the record and the authorities cited by the defendant, we conclude that the judgment of the trial court should be, and is hereby, reversed, and the cause dismissed.

REVERSED AND DISMISSED.